**Conrad SCHIEBELHUT, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

No. 16330.

United States Court of Appeals
Sixth Circuit.

March 18, 1966.

Conrad Schiebelhut, in pro. per.

Thomas L. Robinson, U. S. Atty., William A. McTighe, Jr., Asst. U. S. Atty., Memphis, Tenn., Fred M. Vinson, Jr., Asst. Atty. Gen., Criminal Div., Dept.

of Justice, Washington, D. C., for appellee.

Before O'SULLIVAN, EDWARDS and CELEBREZZE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This cause is the appeal of petitioner-appellant, Conrad Schiebelhut, from an order of the United States District Court for the Western District of Tennessee, dismissing without a plenary hearing his § 2255[1] petition. He sought thereby vacation of a 30 year sentence imposed following his nolo contendere plea to eleven counts of an indictment charging him and his wife with counterfeiting. The judge who ruled on the involved petition had also imposed the challenged sentence.

Two earlier petitions of appellant seeking the same relief on the same grounds as the one before us were dismissed by the District Judge. Dismissal of the first petition, in which appellant's wife joined, was affirmed by us. Schiebelhut v. United States, 318 F.2d 785 (CA 6, 1963). But because at the time the matter reached us, the wife, Bernadette Schiebelhut, had been released on parole, we held that,

"the appellant should be permitted to file a new motion on his own behalf pursuant to Section 2255, Title 28, U.S.C., to be considered in the light of the 'guidelines' of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068 [10 L.Ed.2d 148]."

The second petition was dismissed by the District Judge on June 30, 1964. That petition was styled Motion to Vacate Sentence under Rule 32(a) Fed.R.Crim. P. and for a Writ of Error Coram Nobis. In dismissing it, the District Judge recited,

"that the Court sat as Trial Judge at the time of the entry of the plea of defendant in this case on July 11, 1958, and the Court's memory is very clear as to the matters and things which occurred and of the things now alleged and complained of in this motion to vacate under Rule 35 of the Federal Rules of Criminal Procedure, and in addition thereto, the Court has reviewed the files and records herein and after due deliberation the Court is of the opinion that the motion is not well taken and that the defendant is not entitled to the relief sought."

No appeal was taken from this order, but prior to its entry, petitioner had filed the third petition, the one now before us.

■ The nolo contendere plea was entered July 11, 1958. The instant petition for § 2255 relief is grounded on colorful allegations that threats, coercion and physical abuse visited upon petitioner and his wife by law enforcement officers, together with faithless conduct of some four retained or appointed attorneys, persuaded Schiebelhut and his wife to enter the plea of nolo contendere. Petitioner's privately retained counsel and his first appointed counsel were successively permitted to withdraw from representing him. Thereupon, the District Judge appointed two attorneys of the Memphis bar to appear for the Schiebelhuts. The latter were with them when they made the attacked plea. It is charged that all of these attorneys knew of the mistreatment of the Schiebelhuts but were led, through fear of offending local federal officials or the District Judge, to cowardly refusal to provide the Schiebelhuts with a defense, forcing them to capitulate without a trial.[2] If the attacked plea was the product of such conduct, petitioner should be permitted to withdraw it. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942).

When the plea of nolo contendere was offered, the government objected and there ensued an extended colloquy be-

---

1. 28 U.S.C.A. § 2255.

2. The U. S. Probation Officer and, by indirection, the U. S. District Attorney and the District Judge, also were accused of perfidious conduct toward Schiebelhut.

tween defendants, their counsel, and the District Judge. The District Judge sought to determine whether defendants fully understood the nature of their plea and that its consequences would be the same as upon a plea of guilty. The Schiebelhuts conceded that their counsel had painstakingly explained this to them. Inquiry was made as to why nolo contendere was chosen. A fair reading of the colloquy discloses that the Schiebelhuts were fearful that a plea of guilty might prejudice them should they be charged with passing counterfeit money in other jurisdictions.[3] Direct answer by each of the Schiebelhuts confirmed that such fear was the principal reason for the style of the plea. Asked by the District Judge "is that the reason you assigned at this time for wanting to enter this type of plea," petitioner answered "Yes sirree, your Honor."

At no time during the interchange in open court did appellant suggest that there was any question about his desire to withdraw the not guilty plea and substitute nolo contendere. The record on appeal does not contain a transcript of the imposition of sentence and we are not advised whether the allocution required by Rule 32(a) Fed.R.Crim.P. was provided. It appears, however, that although petitioner alleges that he had been promised leniency, no outcry was made when, in violation of promises alleged to have been made to him, severe sentences were imposed. It was some time after petitioner was confined to prison that he first asserted the wrongs now claimed.

■ To meet the charges of Schiebelhut's petition the government filed affidavits of government officers and the attorney who spoke with and for him in entering the plea. These denied the wrongdoing charged. Such affidavits, however, cannot be regarded as conclusive of the issues. Scott v. United States, 349 F.2d 641, 643 (CA 6, 1965). No case, however, has yet decided whether, *with other record evidence,* such affidavits of officers of the Court may weigh with a District Judge in determining whether it was not incredible that reputable members of the bar would be so shamefully derelict as they were charged, and then compound this faithlessness by a perjurious affidavit. In entering the appealed order on October 20, 1964, the District Judge made reference to his earlier order of July 1, 1964, dismissing a similar petition "based upon the same grounds and allegations" and to the fact that no appeal had been taken therefrom. He then referred to the denial affidavits by the accused officers and attorney, to the pre-plea colloquy, and to his own recollection of "the matters and things which took place at that time" and concluded,

"[T]he Court has reviewed the files and records herein and after due deliberation, the Court is of the opinion that the motion of the petitioner is not well taken and the motion of the United States of America to dismiss the same is well taken, and should be granted."

Once again, it is put to us to determine "on which side of the line of *Machibroda* this 'marginal' case should be placed." Scott v. United States, supra, pp. 643, 644. If the material available to the District Judge was limited to the pre-plea colloquy, the charges of the Schiebelhuts' petition and the government's opposing affidavits, and if petitioner's charges had the required specificity, we would, obedient to Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), remand for the holding of a hearing. The record, however, contains more.

In opposing the Schiebelhut petition, the government employed the procedure of submitting interrogatories to him. Included was a question whether an affidavit made by Schiebelhut and which

3. That such fear was an intelligent one is demonstrated by their admission that Memphis, Tennessee, was but the terminal point of an extensive transcontinental journey in which they engaged in the passing of counterfeit bills.

was a complete confession of the crime charged in the indictment had in fact been signed by him. Asked whether he had confessed to the offense as set out in the affidavit attached to the interrogatory as Exhibit A, he answered "I have no way of knowing whether your Exhibit A is a confession signed by me." The next interrogatory asked whether the confession contained in Exhibit A was true. He answered, "Not as Exhibit A indicates." Exhibit A was a part of the material before the District Judge. It was signed by Schiebelhut and sworn to before a Special Agent in Charge employed by the U. S. Secret Service. It bears date May 3, 1958; the nolo contendere plea was entered July 11, 1958. The affidavit is an extensive and detailed account by Schiebelhut of the circumstances which led to his taking up counterfeiting as a means of livelihood, of his attempted study and practice of the art and his final decision to purchase counterfeit bills from a more skillful manufacturer, limiting his and his wife's contribution to some post-manufacture treatment of the bills to enhance their appearance of genuineness. His account tells that he purchased a supply totalling $150,000 and after their aforesaid treatment, he and his wife embarked on a marketing campaign. He deposed that, "I returned to Los Angeles [after concluding the purchase "on the California side of the border" from a Mexican dealer] and my wife and I decided to go on a passing expedition." This affidavit began with Schiebelhut's prefatory admission that he knew his constitutional rights including his privilege against self-incrimination and went on to say, "I wish to make the following statement of my own free will and accord, without coercion or threats, and without promises of immunity. This statement is a voluntary act on my part, prompted by my desire to tell the facts and I do not expect to gain any reward or special consideration by reason of having made this statement."

The foregoing preface may indeed be "boiler plate" but it has factual content which together with the other circumstances of this case might well serve to justify the District Judge's conclusion that Schiebelhut had been then telling the truth and that his present claim of coercion and threats was so without foundation as to be literally incredible. It is important to note that the incriminating affidavit with its preamble exclusion of threats and coercion was signed and notarized on May 3 following Schiebelhut's arrest on May 2. Nowhere in his unsworn petition here did he make any claim that such affidavit was coerced and, given a second opportunity to do so when directly confronted with it by the mentioned interrogatory, he contented himself with the observation that he had no idea whether it had been signed by him. Nowhere does he specify any coercive conduct which preceded his early admissions made on the day following his arrest.

Of some interest is interrogatory 16, which asked Schiebelhut whether at the time of his arrest "there was not in possession of yourself and your wife counterfeit currency in excess of $100,000?" His answer was, "This has no relevancy to the present issue and I see no reason why I should answer."

■ We are of the view that aided by all of the foregoing and his own observation of Schiebelhut's conduct during the pre-plea colloquy and the content of the latter, the District Judge was justified in making a moral and judicial determination that petitioner's plea was voluntary and that the record conclusively showed that "the prisoner is entitled to no relief."

While no two of these cases present identical fact patterns, we believe that this case fits our decisions in United States v. Orlando, 327 F.2d 185, (CA 6, 1964), cert. den. 379 U.S. 825, 85 S.Ct. 50, 13 L.Ed.2d 35 and Olive v. United States, 327 F.2d 646, (CA 6, 1964), cert. den. 377 U.S. 971, 84 S.Ct. 1653, 12 L.Ed. 2d 740, rather than our decision in Scott v. United States, 349 F.2d 641 (CA 6, 1965). It should be noted that the allegations of Schiebelhut's unsworn peti-

tion do not exhibit the specificity of time and content which characterized those considered in *Machibroda* and *Scott*. In *Orlando*, Judge Miller construed *Machibroda* as holding that a petitioner is not automatically entitled to a full hearing no matter how "palpably incredible his allegations may be" and that "the statute does not strip the district courts of all discretion to exercise their common sense." We recognize that the relevant language of *Machibroda* had literal reference to the necessity of bringing the petitioner into court but we think it had broader implications which have application here.

Affirmed.

EDWARDS, Circuit Judge (dissenting).

In Schiebelhut v. United States, 318 F.2d 785 (C.A. 6, 1963), this court (while denying relief in that proceeding on grounds which are not involved here) said:

"[T]he appellant should be permitted to file a new motion on his own behalf pursuant to Section 2255, Title 28, U.S.C., to be considered in the light of the 'guidelines' of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068 [10 L.Ed.2d 148]." Schiebelhut v. United States, supra at 786.

Petitioner now appeals from denial of a new petition filed under 28 U.S.C. § 2255. The denial was entered without hearing.

I agree with Judge O'Sullivan that the record, plus the affidavits filed before the District Judge, make plaintiff's allegations of coercion and inducement of his *nolo contendere* plea seem highly improbable. I do not, however, see how the specific allegations made by petitioner can be regarded as traversed without consideration of the affidavits. As this court noted in Scott v. United States, 349 F.2d 641 (C.A. 6, 1965), the allegations of a § 2255 petition may not be dismissed by consideration of affidavits without a hearing in court with the right of cross-examination.

I would reverse for hearing.