## MACHIBRODA *v.* UNITED STATES.

No. 69.  Argued December 5, 1961.—Decided February 19, 1962.

By appointment of the Court, 365 U. S. 842, *Curtis R. Reitz* argued the cause and filed a brief for petitioner.

*Julia P. Cooper* argued the cause for the United States. With her on the briefs were *Solicitor General Cox, Assistant Attorney General Miller, Richard J. Medalie* and *Beatrice Rosenberg.*

MR. JUSTICE STEWART delivered the opinion of the Court.

In 1956 two informations were filed in the United States District Court for the Northern District of Ohio charging the petitioner with having robbed banks in Waterville, Ohio, and Forest, Ohio. Represented by counsel of his own choice, the petitioner waived indictment and pleaded guilty to both charges. Sentence was deferred pending a presentence investigation, and in the interim petitioner appeared as a defense witness at the jury trial of Marvin Breaton, charged with participation in the Waterville bank robbery. At that trial the petitioner testified that he had robbed the Waterville bank, but denied that Breaton had been with him. Breaton was convicted by the jury. Three weeks later the petitioner appeared with counsel before the District Judge for sentencing. During the course of the proceedings the judge inquired if counsel had any statement to make, but did not direct any similar inquiry to the petitioner personally. The court imposed sentence of twenty-five years imprisonment on the first information and fifteen years on the second, the sentences to run consecutively.

In 1959 the petitioner instituted the present litigation by filing in the sentencing court a motion under 28 U. S. C. § 2255, to vacate and set aside the sentence he was serving. The motion alleged three grounds upon which it was claimed relief should be granted: that the petitioner's pleas of guilty had not been voluntary, but had been induced by promises made by the Assistant United States Attorney in charge of the prosecution; that in violation of Rule 11 of the Federal Rules of Criminal Procedure the

court had accepted the guilty pleas without first determining that they had been made voluntarily; and that in violation of Rule 32 (a) of the Federal Rules of Criminal Procedure the court had not inquired if the defendant wished to speak in his own behalf before sentence was imposed. The motion was denied by the District Court without a hearing, 184 F. Supp. 881. The Court of Appeals affirmed, *per curiam,* 280 F. 2d 379. We granted certiorari to consider seemingly significant questions as to the scope of relief under 28 U. S. C. § 2255. 365 U. S. 842.

## I.

For the reasons stated in *Hill* v. *United States, ante,* p. 424, we hold that the failure of the District Court specifically to inquire at the time of sentencing whether the petitioner personally wished to make a statement in his own behalf is not of itself an error that can be raised by motion under 28 U. S. C. § 2255 or Rule 35 of the Federal Rules of Criminal Procedure.

## II.

In support of his claim that his pleas of guilty had been involuntarily made, the petitioner's motion and supporting affidavit set out detailed factual allegations. Specifically, the motion and affidavit alleged that on three separate occasions, identified as to time and place, an Assistant United States Attorney had promised the petitioner that he would receive a total prison sentence of not more than twenty years if he pleaded guilty to both informations. These promises were said to have been made upon the authority of the United States Attorney and to be agreeable to the District Judge. It was alleged that the petitioner had been cautioned not to tell his own lawyer about the conversations. It was further alleged that when the petitioner threatened to advise his lawyer and the court of what had transpired, the Assistant

United States Attorney had told him that if he "insisted in making a scene," certain unsettled matters concerning two other robberies would be added to the petitioner's difficulties. Finally, the motion and affidavit alleged that the petitioner had written two letters to the sentencing court and two letters to the Attorney General of the United States "relative to the misrepresentations" by the Assistant United States Attorney, to which he had received no reply.[1]

---

[1] The affidavit filed with the petitioner's motion was as follows:

"John Machibroda, having been duly sworn according to law deposes and says that he is the petitioner in an action filed in this Court entitled 'Motion To Vacate sentence' and this affidavit is made in support thereof:

"1. That affiant was interviewed in the County Jail on or about February 21, 1956, by one Clarence M. Condon who represented himself to be as Assistant United States Attorney in charge of the prosecution of alleged bank robberies committed at the Waterville and Forest Banks. (Later designated as Cases 10345 and 10348). The County Jail where the interview took place is situated in Toledo, Ohio.

"2. That the said Clarence M. Condon represented to the Affiant that he had the authority to speak for the United States Attorney and the United States District Judge in the matter of the amount of sentence that would be imposed in Cases Nos. 10345 and 10348.

"3. That the said Clarence M. Condon represented to the Affiant that if the Affiant would waive indictment in case no. 10348 and plead guilty in cases Nos. 10345 and 10348 the Court would not impose a sentence in the excess of twenty (20) years in Case No. 10345 and that any sentence imposed in Case No. 10348 would not be in the excess of ten (10) years and would be ordered served concurrently with the term imposed in case No. 10345.

"4. That on the assurance of the said Clarence M. Condon that the sentences would be imposed as heretofore set out in paragraph 3, above, the Affiant agreed to waive indictment in case no. 10348 and plead guilty to both cases.* (This interview was held on or about February 21, 1956.)

" *At that time the Affiant had already waived indictment in case No. 10345.

The Government filed a memorandum in opposition to the petitioner's motion, attaching an affidavit of the Assistant United States Attorney. The affidavit emphatically denied any promises or coercion with respect to the petitioner's pleas of guilty, but did admit that the Assistant United States Attorney had had a conversation with the petitioner in the county jail the day before Breaton's trial, at which time the petitioner was told

"5. That the said Clarence M. Condon instructed the Affiant to advise his Attorney, John Schuchmann, that he would waive indictment in case no. 10348 and plead guilty to both cases.

"6. That the said Clarence M. Condon cautioned the Affiant to refrain from advising the said John Schuchmann of his interviews with Mr. Condon and that an agreement had been reached between the government as represented by Mr. Condon, and the Affiant in the matter of waiver, pleas and sentences.

"7. That on February 24, 1956, Affiant acting on the promises and representations of the said Clarence M. Condon waived indictment in case no. 10348.

"8. That on February 24, 1956, the Affiant acting on the promises and representations of the said Clarence M. Condon pleaded guilty in Cases Nos. 10345 and 10348.

"9. That on or about May 22, 1956, the said Clarence M. Condon again interviewed the Affiant at the County Jail and informed Affiant that because of Affiant's unfavorable testimony at the trial of a co-defendant the Court was vexed and there might be some difficulty in regards to the promised twenty (20) year sentence.

"10. That the said Clarence M. Condon admonished the Affiant that he had tried to warn him during the trial of the co-defendant that Affiant would shortly appear before this Court for sentence.*

" *The exact words Mr. Condon used to warn the Affiant are to be found in the transcript of the trial of Marvin Ferris Breaton.

"11. That at no time did the Affiant ever represent to Mr. Condon or anyone else that he would testify one way or the other at the trial of the co-defendant. The promise of the maximum sentence of twenty (20) years was predicated solely on the Affiant's agreement to waive indictment and plead guilty to both informations.

"12. That the Affiant immediately became agitated and hotly informed Mr. Condon that he was going to tell his Attorney the

he was about to be given his last opportunity to tell the truth and that the court, in sentencing, might well take into consideration the petitioner's refusal to talk.

Without a hearing the District Judge determined that the petitioner's allegations as to an agreement with the Assistant United States Attorney were false. The court noted that it had never received either of the two letters

whole story and demand that the Court be informed of the agreement.

"13. That the said Clarence M. Condon assured the Affiant that in the event a sentence in the excess of twenty (20) years was imposed the United States Attorney, himself, would move within sixty (60) days for a reduction of the portion of the sentence in excess of twenty (20) years; that the Affiant had nothing to worry about if he kept his mouth shut; that on the other hand, if Affiant insisted in making a scene in a matter of his own making, there were the unsettled matters of the robberies of the Trotwood and Canal Fulton Banks which would be added to the Affiant's present difficulties.

"14. That on May 23, 1956, the Affiant was sentenced by the Honorable Frank L. Kloeb to twenty-five (25) years in Case No. 10345 and fifteen (15) years in case no. 10348.

"15. That immediately after sentence in an interview with the said Clarence M. Condon, the Affiant was informed he had no reason to worry for as soon as the Judge 'cooled off' the United States Attorney would have the sentence reduced to twenty (20) years as had been promised.

"16. That within a few hours after sentence, the Affiant was on his way to the Federal Penitentiary, Leavenworth, Kansas.

"17. That the sentence was not reduced in sixty (60) days and has not been reduced to date.

"18. That the petitioner wrote two (2) letters to the Honorable Frank L. Kloeb and two (2) letters to the Attorney General of the United States relative to the misrepresentations by the said Clarence M. Condon. These letters were posted in the official prisoner's mail box and the Affiant has failed to receive a reply to any of them.

"19. That the Affiant's previous experience with Court officials has been with the authorities representing the Canadian Government and he found them to honor their commitments. He had no reason to believe that the officials of the United States Courts would do otherwise. His naivete has cost him an extra twenty (20) years in prison."

referred to by the petitioner, but had received a letter purportedly from him six months after sentencing, which did not mention any agreement, but simply requested that the sentences be made concurrent, rather than consecutive. The court further noted that the petitioner had not complained when no request for a reduction of sentence was made by the United States Attorney within sixty days after sentencing, and that instead, the petitioner had waited almost two and a half years to file the present motion.

There can be no doubt that, if the allegations contained in the petitioner's motion and affidavit are true, he is entitled to have his sentence vacated. A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. See *Walker* v. *Johnston,* 312 U. S. 275; *Waley* v. *Johnston,* 316 U. S. 101; *Shelton* v. *United States,* 356 U. S. 26, reversing, 246 F. 2d 571.[2] "A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." *Kercheval* v. *United States,* 274 U. S. 220, 223.

The District Court recognized that the "charges of an agreement between a former Assistant United States Attorney and the defendant are serious," and stated that

---

[2] See also *Daniel* v. *United States,* 107 U. S. App. D. C. 110, 274 F. 2d 768; *Teller* v. *United States,* 263 F. 2d 871; *Watson* v. *United States,* 104 U. S. App. D. C. 321, 262 F. 2d 33; *Euziere* v. *United States,* 249 F. 2d 293; *Motley* v. *United States,* 230 F. 2d 110; *United States* v. *Paglia,* 190 F. 2d 445.

if "this Court had any doubt as to their falsity it would require a hearing." The court determined, however, that the combination of factual inferences already mentioned "conclusively indicates the falsity of the defendant's allegations." 184 F. Supp., at 883.

We think the District Court did not proceed in conformity with the provisions of 28 U. S. C. § 2255, when it made findings on controverted issues of fact without notice to the petitioner and without a hearing. *United States* v. *Hayman,* 342 U. S. 205, 220. The statute requires a District Court to "grant a prompt hearing" when such a motion is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." [3] This was not a case where the issues raised by the motion were conclusively determined either by the motion itself or by the "files and records" in the trial court. The factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Government's response, related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real

---

[3] Section 2255 of Title 28, United States Code, provides in part: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.

We cannot agree with the Government that a hearing in this case would be futile because of the apparent lack of any eyewitnesses to the occurrences alleged, other than the petitioner himself and the Assistant United States Attorney. The petitioner's motion and affidavit contain charges which are detailed and specific. It is not unreasonable to suppose that many of the material allegations can either be corroborated or disproved by the visitors' records of the county jail where the petitioner was confined, the mail records of the penitentiary to which he was sent, and other such sources. "Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record it is his right to be heard." *Walker* v. *Johnston,* 312 U. S. 275, at 287.

What has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.[4] Whether the petition in the present case can

---

[4] Section 2255 of Title 28, United States Code, also provides, in part: "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."

appropriately be disposed of without the presence of the petitioner at the hearing is a question to be resolved in the further proceedings in the District Court.

There will always be marginal cases, and this case is not far from the line. But the specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible. If the allegations are true, the petitioner is clearly entitled to relief. Accordingly, we think the function of 28 U. S. C. § 2255 can be served in this case only by affording the hearing which its provisions require.

*Vacated and remanded.*

THE CHIEF JUSTICE, MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN concur in the Court's judgment and opinion except as to Part I, from which they dissent for the reasons set out in their dissent in *Hill* v. *United States, ante,* p. 430.

MR. JUSTICE CLARK, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE HARLAN join, dissenting.

The Court awards petitioner, a bank robber serving sentences in Alcatraz, a hearing on a § 2255 petition which it admits is "not far from the line" marking those applications the trial judge may ordinarily deny. If this be true, the doubt should be resolved in support of the decision below, not in the destruction of it. The experienced trial judge, who had been with this case from the very beginning, found the files and records conclusively show to be false petitioner's contention that his pleas of guilty were induced by promises of leniency. Accordingly, petitioner's application under § 2255 was dismissed without a hearing in exact compliance with that section. The Court of Appeals affirmed this dismissal. This Court now rejects the inferences drawn from the files and records by the courts below and substitutes its own find-

ing that these materials do not conclusively belie petitioner's story and that it is necessary to go outside the files and records to discover the truth of the matter. With this conclusion I cannot agree.[1] It represents not only a failure to give due deference to the inferences drawn by the two lower courts but an unwarranted restriction of the summary disposition provision of § 2255. The opinion is an invitation to prisoners, always seeking a sojourn from their keepers, to swear to "Munchausen" tales when self-interest readily leads to self-deception in § 2255 applications. Once the opinion goes the rounds of our prisons, we will likely be plagued with a rash of such spurious applications.[2]

The record shows that petitioner, who had previously been convicted of armed robbery, participated in four bank robberies in Ohio, which at the point of a sawed-off shotgun netted over $169,000. After the last of these robberies, the Waterville State Savings Bank, he escaped to Canada. He was arrested there and upon waiver of extradition was returned to Ohio. An information was filed charging petitioner and one Breaton with the robbery of the Waterville Bank. Both signed in open court waivers of indictment on the charges. A week later another information was filed against the petitioner alone charging him with the robbery of the First National Bank of Forest. Petitioner, who was accompanied by counsel throughout, again filed a waiver of indictment, and at this time he pleaded guilty to both informations. The trial judge called for a presentence report, and petitioner was returned to jail.

---

[1] I concur in Part I of the Court's opinion.

[2] Section 2255 cases have been steadily on the increase. The fiscal year 1961 saw a new high of 560 applications filed under this section, an increase of 15% over the previous year. The frivolous nature of these applications is indicated by the fact that less than 3% were granted by the District Courts.

In the interim between pleading and sentencing, petitioner pursuant to a subpoena testified on behalf of the defense at the trial of his codefendant Breaton. He admitted that he had committed the Waterville robbery but denied that Breaton was in anywise connected with it. He claimed that another person, presently unknown to him, whom he had picked up in a bar in Canada was his accomplice. He testified that they had driven together from Canada to Waterville, but he insisted that he not only did not know his accomplice's name but could not describe him. State witnesses testified that petitioner had stated in their presence that Breaton was the accomplice. The jury disbelieved petitioner and found Breaton guilty. Shortly thereafter petitioner appeared for sentencing before the same judge who had presided over Breaton's trial and was given a total of 40 years, 25 in the Waterville and 15 in the Forest robbery.

Three years later petitioner filed this application before the same trial judge claiming that an Assistant United States Attorney, with full authority of his superior and with the implied consent of the judge, promised him a total sentence of 20 years, rather than the 40 which he had received, in return for a waiver of indictment in the second case and a plea of guilty in each case. He alleged that the Assistant had contacted him in the local jail twice before sentencing and once immediately afterwards. The latter occasion was to reassure him that the sentence would be reduced to 20 years within 60 days. The Government contested these allegations and filed a detailed affidavit by the Assistant specifically denying each of the charges.

An examination of the files and records in this case reveals that petitioner clearly outspoke himself. If a deal had been made, it borders on the incredible that petitioner would sit quietly in prison for over two and one-

half years after the prosecutor had reneged on his promise.[3]  To my mind it is preposterous to think that the prosecutor would make the trade alleged when *before* any promises were allegedly made not only had petitioner waived indictment on the Waterville robbery, which was the more serious of the two charges, but his attorney in his presence had mentioned to the judge in open court the "possibility of another information being filed" and had indicated a clear intention to waive indictment on "both informations" and to plead guilty to at least one.  Moreover, experienced criminals such as petitioner know that judges, not prosecutors, control sentences.  Petitioner says the Assistant had the "implied" consent of the judge.  Certainly this would have not been sufficient for one so experienced as petitioner.  The pledge he alleges the Assistant exacted as to silence with reference to his attorney did not include the judge. Despite this and even though he appeared before the judge on three occasions subsequent to the alleged "deal," he never mentioned the same nor asked for any conference with the judge *in camera*.  Finally, it is inconceivable that credence could be given to a story of an agreement of leniency told by a hardened criminal who before the alleged agreement was performed had testified against the Government and favorable to a codefendant.  Prosecutors make deals, if at all, for testimony to *support* their prosecutions, not to *destroy* them.

In addition to being unbelievable in light of the files and records, petitioner's claim is inconsistent therewith. To explain his tardiness in seeking formal relief, petitioner alleges several previous informal attempts by letter to prod the Government into fulfilling its obligations.  Yet

---

[3] For a case in which this factor alone was considered sufficient to summarily deny an application, see *United States* v. *Lowe,* 173 F. 2d 346 (C. A. 2d Cir. 1949).

the protest letters supposedly sent to the trial judge were not received by him and were not in the files where under departmental routine they would have been deposited had they been received. But petitioner's file is not barren of letters for it contains one written by petitioner to the trial judge several months after the Assistant United States Attorney had failed to perform the purported bargain. This letter, however, did not even remotely suggest an agreement but merely sought a reduction of sentence based upon repentance. Then, of course, there is petitioner's own admission at the time his guilty pleas were entered that such action was voluntarily taken.

For the Court to say that an application so inconsistent and incredible cannot be dispatched without a hearing leaves the summary dismissal exception of § 2255 meaningless.[4] As pointed out by the Government, to require a hearing in this case means "that the number of hearings held on motions under Section 2255 would be limited only by the imagination and ingenuity of the prisoners involved." An ingenious prisoner can deliberately bait his application with claims beyond independent proof or disproof and then demand that he be brought to court to tell the story known only to him, no matter how inconsistent and incredible it may be in light of the files and records. The Court "supposes" that in the present case "many of the material allegations can either be corroborated or disproved by the visitors' records of the county jail where the petitioner was confined, the mail records of the penitentiary to which he was sent, and such other sources." If such independent proof is available, which

---

[4] In evaluating the inferences to be drawn from the files and records some weight must be accorded the personal recollection of the trial judge. *E. g., Dario Sanchez* v. *United States*, 256 F. 2d 73 (C. A. 1st Cir. 1958). Judge Kloeb observed petitioner at the time he entered his pleas of guilt and again when he was sentenced. He had also listened to petitioner's blatant lies at the trial of his codefendant.

I doubt,[5] then these avenues should be explored before permitting the petitioner to make a trip into town.[6] Why not ask for a response in this regard, as we often do, before ordering a hearing with the attendant expense and hazards. The Court. implies that a *full* hearing may not be required in a given case if the allegations are sufficiently "vague, conclusory, or palpably incredible." Although I would not require *any* hearing under the circumstances of this case, I submit that if upon remand it develops that no letters were mailed and that the Assistant United States Attorney did not visit the jail as claimed, then even the rationale of the Court's opinion would not require that petitioner be summoned to tell his story in court.[7]

Alcatraz is a maximum security institution housing dangerous incorrigibles, and petitioner wants a change of scenery. The Court has left the door ajar for a trip from California to Ohio along with the accompanying hazards. I would deny it.

---

[5] Although prisons keep records of letters which actually go out, no record is made of every letter dropped in the mailbox. Jails likewise keep some records of visitors but do not necessarily record which prisoners are interviewed by police investigators and prosecutors, who are there regularly.

[6] It could be argued that the visitor and mailing records are part of the "files and records of the case" within the meaning of § 2255 and that therefore such records could be examined by the trial judge in determining whether a hearing is necessary.

[7] 28 U. S. C. § 2255 provides in part that: "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."