**UNITED STATES of America**
v.
**MISS SMART FROCKS, INC., Leo Carlino and Herman Klein, Defendants.**
**No. 62 Cr. 349.**

United States District Court
S. D. New York.
Feb. 9, 1968.

Robert M. Morgenthau, U. S. Atty., for the United States; Elkan Abramowitz, Asst. U. S. Atty., of counsel.

Warner & Birdsall, New York City, for defendant Leo Carlino; James E. Birdsall, New York City, of counsel.

WYATT, District Judge.

This is a motion in the nature of a writ of error coram nobis (28 U.S.C. § 1651(a)) for an order setting aside a judgment of this Court of conviction of Leo Carlino ("movant") and Miss Smart Frocks, Inc. (the "corporation"), a New York corporation of which movant was an officer, director and stockholder. The judgment was entered on December 9, 1962 after pleas of guilty by movant and by the corporation.

An indictment (62 Cr. 349) was returned on April 11, 1962 charging the corporation, the movant and Herbert Klein with conspiracy and with the substantive offenses of attempted income tax evasion or filing false income tax returns or both. Some of the twenty counts charged movant alone, some Klein alone, and some charged all three defendants jointly.

On the same day—April 11, 1962—an indictment (62 Cr. 348) was returned naming as defendants Frank Carlino (son of movant), Malcolm B. Klein (son of Herman Klein), and Lady Smart, Inc., a corporation. There were nineteen counts charging the defendants with conspiracy and with substantive offenses of attempted income tax evasion.

On May 7, 1962, all defendants in both indictments pleaded not guilty.

Evidently counsel for movant had been discussing a plea of guilty in 62 Cr. 349 with the Assistant United States Attorney in charge (the "Assistant"). As to 62 Cr. 348, proposed affidavits had been submitted to the Assistant which would show, as set out in a letter of September 3, 1963 from counsel for movant to the Assistant, "that these individuals [Frank Carlino and Malcolm B. Klein] * * * are not guilty of the violations of the income tax statute charged in 62 Cr. 348." The cited letter stated that an "agreement" had been reached, the first part of which was said to be that the government would dismiss 62 Cr. 348 "upon presentation of affidavits in the form previously submitted duly executed by Frank Carlino and Malcolm B. Klein establishing that Lady Smart, Inc. and they are innocent of the charges brought against them in that indictment." The last part of the "agreement" was said to be that movant and the corporation would plead guilty to count 16 of the indictment (62 Cr. 349), that all other counts would be dismissed, that counsel for movant would be free to urge maximum leniency, and that the United States Attorney would make no

recommendation. In reply, under date of September 16, 1963, the Assistant flatly denied any "agreement". Specifically as to 62 Cr. 348, the Assistant wrote that "competent and convincing evidence with respect to any defendant's innocence will be carefully considered by the Government before proceeding to trial".

On November 7, 1963, movant, before Judge Cannella with counsel, withdrew his plea of not guilty to count 2 of 62 Cr. 349 and pleaded guilty to that count. Count 2 charged that movant attempted to evade income tax due for the calendar year 1955 by filing a false income tax return for that year in violation of Int. Rev.Code of 1954, § 7201. At the same time, the corporation through its counsel (authorized thereto by the directors) pleaded guilty to count 16 of 62 Cr. 349. Count 16 charged that the corporation, the movant and Herman Klein attempted to evade income tax due from the corporation for the fiscal year ending January 27, 1956 by filing a false income tax return for the corporation for that year, in violation of Int.Rev.Code of 1954, § 7201.

Before accepting movant's guilty plea, Judge Cannella questioned him; at first, the Judge was not certain as to the answers of movant and adjourned the plea for a period of time, declaring that he would not accept the plea from movant "unless he tells me he is really guilty of the crime". Later on the same day, Judge Cannella questioned the movant again. The transcript shows the following questions and answers, among others:

"BY THE COURT:

Q All right, let's start all over again, Mr. Carlino; you want to plead guilty and you have entered such a plea, which I am not too sure I am going to take yet, but I want to find out what you know about it. You are pleading guilty to a charge which says that you violated the Internal Revenue Laws. It says here that on April 14 you filed a return which in effect was a false return for the calendar year 1955, and you filed a joint return at that time on behalf of yourself and your wife, and at that time you said that the taxable income for that year was $54,000 in round figures, and the tax due on that was $22,000, whereas the fact of the matter was that the income was about $70,000 and the tax was about $32,000.

Did you file such a return?

A Yes, sir.

Q And you knew at the time that you were in effect understating your income by about $25,000?

A Yes.

Q You did know that?

A Yes, sir.

Q It was prepared by an accountant for you and then you signed it; is that it?

A Yes, sir.

Q There is no question in your mind that you knew that this return was a false return when you filed it?

A No, sir.

Q There is not?

A No, sir."

Judge Cannella was also assured by movant on the record that no promises had been made to movant by anyone.

Judge Cannella accepted the pleas of guilty of movant and of the corporation (Fed.R.Crim.P. 11).

Thereafter, on December 9, 1963, a sentence of imprisonment of a year and a day and a fine of $5,000 was imposed on movant, which sentence has been served and paid. Sentence of a fine of $10,000 was imposed on the corporation and has been paid. The remaining counts in indictment 62 Cr. 349 naming movant and the corporation were dismissed on their motion, without objection by the government.

On March 12, 1964, Herbert Klein pleaded guilty to count 9 of 62 Cr. 349 and was sentenced the same day.

On March 19, 1964, Lady Smart, Inc. pleaded nolo contendere to indictment 62 Cr. 348 and was fined $4,000.

On April 22, 1964, the United States Attorney filed a dismissal ("nolle prosequi") of indictment 62 Cr. 348 against Frank Carlino and Malcolm B. Klein and leave of Court was granted the same day (Fed.R.Crim.P. 48(a)). The reason given in the dismissal for its filing was that affidavits had been submitted by Frank Carlino and Malcolm B. Klein "alleging the transfer to their fathers of substantially all the moneys with which they were charged in this indictment [62 Cr. 348]". By this time the fathers had pleaded guilty and had been sentenced.

On October 21, 1964, a divided Tax Court, apparently departing from earlier decisions, held that convictions, whether on plea of guilty or not, of a violation of Int.Rev.Code of 1954, § 7201 precluded a taxpayer from denying underpayment of tax for the year or years involved or that part of such underpayment was due to fraud (Int.Rev.Code of 1954, § 6653(b)). John W. Amos, 43 T. C. 50; Arctic Ice Cream Co., 43 T.C. 68.

In 1966, the Commissioner of Internal Revenue gave notice to movant and the corporation of an income tax deficiency and a fraud penalty for the year 1955. Petitions to the Tax Court followed (Int. Rev.Code of 1954, § 6213(a)).

In the Tax Court, movant and the corporation are faced by the collateral estoppel effect of their guilty pleas as to the year 1955 (movant) and the fiscal year ending January 27, 1956. The present motion has been made, therefore, with the avowed object of removing the effect of the guilty pleas in the Tax Court so that the issue of fraud could be contested there for the years indicated. Should relief be granted, presumably a not guilty plea would be entered as to the counts involved and they would then be tried in this Court. Should such a trial result in convictions, there would again be a collateral estoppel in the Tax Court. *John W. Amos,* above.

The present motion is procedurally proper to test the guilty pleas entered in 1963. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); see United States v. Keogh, 391 F.2d 138 (2d Cir. February 2, 1968).

There are enough facts which are undisputed to require that this motion be denied. No hearing is necessary.

The issue is solely whether the pleas of guilty were "voluntary". Machibroda v. United States, 368 U.S. 487, 493, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962); Fed.R. Crim.P. 11.

As for the corporation, there is no showing that a motion in its behalf has been authorized. The notice of motion is signed by counsel for Leo Carlino (the movant) only. It is not shown that movant is presently an officer or director of the corporation. The record shows that the plea of guilty was entered by the corporation through counsel, "authorized by the directors" so to do. There is no affidavit by counsel or by any director to show that the plea by the corporation was not voluntary.

As for the movant, he first contends that if a "promise" induces a plea of guilty the plea is not voluntary, whether or not the "promise" is carried out.

Assuming that this contention is correct, there is no showing for movant that there was any "promise". His affidavit is only that his counsel advised him at the time that the United States Attorney had "indicated" that if movant pleaded guilty to one count, the government would dismiss other counts and would dismiss all counts in the separate indictment against movant's son and others; movant does not say that the United States Attorney dealt with him; rather it appears that the only dealings were with movant's counsel and there is no affidavit from counsel as to what, if anything, counsel told movant. The correspondence before the plea contains a written denial by the Assistant that there was any "agreement". The record shows that dismissal of the charges in the separate indictment against movant's son was considered and effected on a showing by affidavit of the innocence

of the defendants named in that indictment, and not on any plea of guilty by movant. Finally, Judge Cannella, before accepting his plea of guilty, asked movant whether "any promise" had been made to him "by anyone, either your lawyer or the District Attorney?" Movant answered: "No, sir". He will not now be heard to say that this answer relied on by the judge, was false.

In this connection, it is significant that for over four years after the plea of guilty was entered, movant made no claim that it was induced by promises and was involuntary.

■ But suppose that there was a promise, as movant contends. It is plain and is conceded that the promise was fully carried out. All other counts in 62 Cr. 349 were dismissed and all counts in 62 Cr. 348 against movant's son and others were dismissed. It would be a travesty of justice if, after receiving the benefits of dismissal of all other counts in 62 Cr. 349 and of all counts in 62 Cr. 348—as to which the statute of limitations would preclude prosecution now—movant were permitted to set aside his plea of guilty. No authority has been cited, and none has been found, for the proposition that an agreement for a plea of guilty renders the plea involuntary as a matter of law and without regard to the fairness of the transaction. There is authority to the contrary. Cortez v. United States, 337 F.2d 699 (9th Cir. 1964), cert. denied, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965); United States v. Cariola, 323 F.2d 180 (3d Cir. 1963); Kent v. United States, 272 F.2d 795 (1st Cir. 1959); Martin v. United States, 256 F.2d 345 (5th Cir.), cert. denied, 358 U.S. 921, 79 S.Ct. 294, 3 L. Ed.2d 240 (1958); Shelton v. United States, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (en banc majority), rev'd on confession of error, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958); American Bar Ass'n Project on Minimum Standards for Criminal Justice, Pleas of Guilty (1967); Note, 112 U.Pa.L.R. 865 (1964).

Movant cites United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y.1967) and United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y.1966). These are cases where alleged promises with respect to sentences were not kept. They have no application to this situation where, accepting the claims of movant, he got exactly the benefits he expected.

■■ The other contentions for movant are without merit. He contends that on advice of his counsel, he believed that the guilty plea would not prevent him from litigating the issue of fraud in the Tax Court. At the time, this advice appears to have been correct. Meyer J. Safra, 30 T.C. 1026 (1958). It was nearly a year later that the Tax Court changed the rule. Surely the validity of guilty pleas cannot be affected by subsequent changes in the law from that correctly understood by the defendant at the time of plea. Indeed, even if counsel's advice had been wrong at the time given, it related to a "collateral consequence of conviction" and would not affect the voluntary character of the plea. United States v. Parrino, 212 F.2d 919 (2d Cir.) cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954). The language used by the Court in *Parrino* is particularly apt here (212 F.2d at 922):

"Doubtless there may frequently arise tax evasion cases in which after conviction on a plea of guilty the defendant is unpleasantly surprised when, confronted with a civil action for the recovery of evaded taxes, he finds a defense foreclosed by his plea in the criminal cases. * * * We think it plainly unsound to hold, * * that such defendants are subject to manifest injustice, if held to their plea, merely because they do not understand or foresee such collateral consequences. We find no case which even looks in that direction * * *."

■ Movant also says that he did not realize that conviction on his plea of guilty would deprive him of the right to vote in New York. Assuming this to be true, it is another collateral consequence, ignorance of which does not

affect the voluntary character of a plea of guilty. The Third Circuit Court of Appeals, in United States v. Cariola, 323 F.2d 180, 186 (1963) said:

"To hold that no valid sentence of conviction can be entered under a plea of guilty unless the defendant is first apprised of all collateral legal consequences of the conviction would result in a mass exodus from the federal penitentiaries. The collateral effect of a federal conviction varies, depending upon the offense, and whether state or federal law is involved. State laws are far from uniform. The effect of a conviction as an admission in a later civil action, upon the credibility of the defendant as a witness, his right to vote, his qualification to hold office, its sentencing significance under 'second offender' laws, and its deportation relevance in the case of aliens, are but a few of the areas in which a federal conviction can have important collateral legal significance.

"Despite the breadth and frequency of the judicial statements that a defendant cannot be held to a plea of guilty which is made without an understanding of its consequences, the factual situations which have occasioned the statements afford no basis for holding that the finality of a conviction depends upon a contemporaneous realization by the defendant of the collateral consequences of his plea."

██ Finally, it should be noted that Judge Cannella made a meaningful and painstaking inquiry into the facts. In response to specific questions, movant stated that he filed a return for 1955, that he understated income by about $25,000 and that he knew the return was false when he filed it. The record establishes that the plea of guilty was made because movant believed himself guilty and that the plea was "made voluntarily" (Fed.R.Crim.P. 11).

The motion is denied.

So ordered.