**James Douglas SEMON, Plaintiff,**

v.

**John W. TURNER, Warden, Utah State Prison, Defendant.**

**No. C 242–67.**

United States District Court
D. Utah C. D.

Sept. 26, 1968.

Richard L. Evans, Salt Lake City, Utah, for plaintiff.

Gerald G. Gundry, Asst. Atty. Gen., for defendant.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

The petitioner, James Douglas Semon, is confined in the Utah State Prison under the Western Interstate Corrections Compact,[1] where he is serving a

1. Cal. Penal Code §§ 11190 to –96 (Supp.1967) and Utah Code Ann. §§ 77–63–1 to –5 (Supp. 1967).

sentence imposed on September 4, 1965, by the Municipal Court, Southern District, County of San Mateo, California, for forgery in violation of Cal. Penal Code § 470. Petitioner seeks a writ of habeas corpus on the ground that his plea of guilty was induced by his counsel's representation that a binding plea agreement had been made and that the purported agreement was not kept.

Before being transferred to Utah, plaintiff petitioned the Superior Court of the State of California in and for the County of Tuolumne for a writ of habeas corpus. That court denied the petition on July 10, 1967, stating that it had studied the records carefully and found that petitioner had failed to show any legal cause for the issuance of the writ. A similar petition was denied on November 21, 1967, by the United States District Court for the Eastern District of California, Sherril Halbert, J., for failure to exhaust state remedies by first presenting the issues involved to the California Supreme Court. After being transferred to the Utah State Prison, petitioner filed his initial petition in this court, which was denied pending exhaustion of state remedies.[2] Subsequently, on March 21, 1968, petitioner sent a petition for writ of habeas corpus to the California Supreme Court alleging the same grounds for setting aside his plea and the resulting commitment as are alleged here. He received a postcard from the clerk of the California Supreme Court on or about April 26, 1968, stating "Petition for Writ of Habeas Corpus denied." It does not appear from the record that the court held any hearing or entered any written findings. It is clear that petitioner has now exhausted his state remedies as required by Section 2254 of Title 28, United States Code.

Thereafter, petitioner filed an amended petition for writ of habeas corpus in this court alleging that his guilty plea was involuntarily entered. I appointed counsel and granted an evidentiary hearing.

The original information against petitioner in the San Mateo County Court contained three counts: receiving stolen property (Cal. Penal Code § 496); forgery (§ 470); and possession of a stolen check with intent to pass or utter (§ 475 (a)). Initially, petitioner entered a plea of not guilty to all three counts but subsequently changed his plea to guilty on the forgery count on September 4, 1965, and the other two counts were dropped. Sentencing was twice postponed, once to permit petitioner a hearing as a possible drug addict and again to allow him to plead to another charge pending against him in Santa Clara County, California. That charge was dismissed, and the Santa Clara County Court mistakenly released petitioner instead of returning him to the San Mateo Court, whereupon he went to Bountiful, Utah, and resided with his father until he was arrested on a fugitive warrant on December 14, 1965. Petitioner waived extradition and was returned to California. On January 14, 1965, petitioner was sentenced on the forgery charge to five years imprisonment, suspended upon condition that he fulfill the following terms of probation: A five year probationary period, one year in the county jail, some restitution, and return to Utah to reside with his father upon release from jail,[3] together with other general conditions of probation.

After serving his time in the San Mateo County Jail pursuant to the terms of the Probation Order, petitioner returned to Bountiful, Utah. On October 11, 1965, he was arrested in Davis County, Utah, and charged with attempting

---

2. I held that the reach of the remedy of habeas corpus could not be frustrated by the circumstance that the defendant was convicted in California, and that the petitioner's removal to Utah under the Corrections Compact did not deprive the California courts of habeas corpus jurisdiction.

3. This last term of probation was subsequently held void as a "banishment" by the Superior Court of the State of California, County of Tuolumne, (No. 11030, July 10, 1967). The void provision, however, was held severable and did not affect the validity of the remaining terms.

to obtain a drug or medicine by fraud, forgery, or false representation in violation of Utah Code Ann. § 58–17–14.13 (Supp.1967). Petitioner plead not guilty but later changed his plea to guilty. After serving a jail sentence of 120 days, petitioner was returned to California to show cause why his probation should not be revoked for violating two terms of his probation, to-wit: failure to pay restitution of $100 per month and a violation of the law. In December, 1966, defendant was committed to the California State Prison and was later transferred to the Utah State Prison under the Western Interstate Corrections Compact,[4] to continue serving the sentence here challenged.

Petitioner contends that his plea of guilty should be set aside because it was induced by representations of his counsel that an agreement had been made with the prosecutor for him to receive "county jail time" instead of a state prison sentence and the purported promise was not kept. Petitioner testified that at the time set for preliminary hearing in the San Mateo County Court he noticed his attorney conferring with the prosecutor in the courtroom. Immediately following this conversation, the defendant's attorney:

> \* \* \* came over to the jury box, and he told me that he had made arrangements with the district attorney to drop all the other charges and give me county jail if I'd plea guilty on a count of forgery. And I said "Now, wait a minute. Are you sure of this arrangement?" I mean, I— you know, I was awfully scared at the time. And he made it quite clear that he had made that arrangement with the district attorney, that I didn't have anything to worry about. I don't know what other conferences he may have had with them; but, like I say, it appeared he was talking with them when I came into the courtroom. And he

assured me of the fact that all I would receive was county jail on one count.

Petitioner further testified that he discussed other checks with a police officer who assured him that it was all right to do so in view of the arrangement that had been made concerning his guilty plea and county jail time, and that in reliance on the purported agreement he terminated proceedings which might have resulted in his commitment to the California Rehabilitation Center as a narcotic addict. Petitioner also indicated that he had had poor relations with the probation department in the past and that he wished to avoid both state prison and state probation and that he would have preferred one year in the county jail to state probation with no jail sentence at all. Petitioner was the only witness at the hearing; his attorney in the California proceedings did not testify.

This case raises the constitutional issue whether or not petitioner's guilty plea was voluntarily entered. More particularly, the questions are whether the promise in question was kept; if not, whether the representations of petitioner's own counsel renders the plea involuntary and whether the petitioner's alleged misunderstanding concerning the terms of the plea bargain, and thus of the consequences of the plea, renders the plea involuntary.

I

Since a guilty plea constitutes a waiver of the sixth amendment right to trial, it must conform to constitutional standards of voluntariness. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Before accepting a plea of guilty, the court must determine that "the plea is made voluntarily with understanding of the nature of the charge." Fed.R.Crim.P. 11. This rule is generally interpreted to mean that a defendant should understand the

4. Cal.Penal Code §§ 11190 to –96 (Supp.1967) and Utah Code Ann. §§ 77–63–1 to –5 (Supp. 1967).

"consequences of the plea." *See, e.g.,* Meaton v. United States, 328 F.2d 379, 380–81 (5th Cir. 1964), *cert. denied,* 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965); Kadwell v. United States, 315 F.2d 667, 669 (9th Cir. 1963). In addition, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). In determining whether or not a guilty plea was voluntarily entered a subjective standard must be applied since it is the defendant's state of mind that is in issue. The courts have indicated, however, that while subjective, voluntariness is nevertheless a question of fact which must be determined through reasonable inferences drawn from the evidence as a whole. For example, in rejecting the state's contention that a subjective standard of voluntariness is too difficult to apply, the court in United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y. 1967) commented:

> The state of a man's mind, like most other issues of fact, is decided on the basis of reasonable inferences drawn from the known surrounding facts and circumstances. * * * While a prisoner may proclaim that his prior state of mind negated the voluntariness of his plea, if it was unreasonable for him to entertain such a belief, faith in his veracity will be shattered. "[R]easonableness goes to the credibility of the accused as a matter of evidence."

*Id.* at 518.

In evaluating the voluntariness of the petitioner's guilty plea in this case, it may be noted that the occurrence of plea bargaining is a recognized fact in the administration of criminal law. *See, e.g.,* American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty 3–5, 60–78 (Tent. Draft 1967); J. Skolnick, Justice Without Trial (Cambridge: Harvard University Press 1967).

That a guilty plea was entered in reliance on an agreement does not automatically vitiate the voluntary character of the plea. If the agreement was fair and reasonable and the state's promise was kept, many courts will refuse to permit withdrawal of plea. *See, e.g.,* Kinney v. United States, 391 F.2d 901 (1st Cir. 1968). As stated by the court in United States v. Miss Smart Frocks, Inc., 279 F.Supp. 295 (S.D.N.Y. 1968):

> No authority has been cited, and none has been found, for the proposition that an agreement for a plea of guilty renders the plea involuntary as a matter of law and without regard to the fairness of the transaction. There is authority to the contrary. *Id.* at 299. [Citations omitted.]

Petitioner testified that his attorney told him that if he would plead guilty to one count of forgery he would receive "county jail time" and that the other two counts would be dropped. These counts were in fact dropped and the petitioner did in fact receive "county jail time" under the terms of the probation order. Petitioner testified that he knew he was pleading guilty to a felony. While his counsel cites Cal. Penal Code § 17, Meyer v. Superior Court, 247 Cal.App.2d 133, 55 Cal.Rptr. 350 (1966), to show that a sentence to county jail would have converted the charge to a misdemeanor, there is nothing in the record to indicate that petitioner was aware of this provision. Petitioner further testified that his counsel assured him he had "nothing to worry about." There is also nothing in the record, however, to indicate that in making these assurances counsel was aware that petitioner wanted to avoid probation or a suspended state prison sentence. On the contrary, the record suggests that the attorney knew his client would spend some time in confinement and that he did not want to spend it in the state prison, and that counsel arranged for the petitioner to serve his sentence in the county jail rather than in the state prison. Nothing in the record suggests that the attorney promised any

more than that he would be able to serve his sentence in the county jail. Moreover, the question of state probation versus a county jail sentence arose only through petitioner's own actions. Only because he violated the conditions of probation was he committed to the state prison—had he complied with the Probation Order he would have had no complaint.

■ In short, petitioner claims he was promised he could serve his sentence in the county jail and he got about what he says he bargained for.

## II

Assuming that the alleged plea agreement was kept by the state in allowing petitioner to serve his sentence in the county jail, or more particularly, that his attorney's representation was fulfilled, the essence of petitioner's claim must be that he subjectively misunderstood the terms of the plea bargain as presented to him by his attorney. The question requiring resolution is whether or not such a misunderstanding about the terms of the plea agreement, and thus about the consequences of the plea, renders the plea involuntary.

Other courts have drawn a distinction between consequences of the plea about which a defendant must be informed and must understand, such as the "range of allowable punishments," Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948), and "collateral consequences," a misunderstanding of which will not vitiate the plea. *See, e.g.,* Meaton v. United States, 328 F.2d 379 (5th Cir. 1964) (per curiam), *cert. denied,* 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 841 (1965) (defendant need not be informed that as a convicted felon he would lose passport); United States v. Parrino, 212 F.2d 919 (2d Cir. 1954), *cert. denied,* 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954) (need not be informed that as an alien he will become subject to deportation); Redwine v. Zuckert, 115 U.S.App. D.C. 130, 317 F.2d 336 (1963) (per curiam) (pleading guilty to burglary in a civilian court may result in dis-

honorable discharge from Air Force); Trujillo v. United States, 377 F.2d 266 (5th Cir. 1967) (plea of guilty on narcotics charge results in ineligibility for parole).

■ Assuming that petitioner's primary concern was to avoid serving time in the state prison, his alleged misunderstanding can fairly and reasonably be characterized as concerning not the substance of the agreement but the mechanics of performance; the promised "county jail time" was achieved by suspending petitioner's state prison sentence on condition that, *inter alia,* he serve one year in the county jail. While the above cited cases involve consequences of the plea not directly concerning the sentence imposed, and hence are more clearly collateral than the alleged misunderstanding involved here, they do indicate that the requirement of a voluntary and understanding waiver is subject to limitation in reason. As stated by the court in Trujillo v. United States, *supra:*

> It is obvious that while a defendant is entitled to be informed to the end that he will understand the nature of the charge, it is not necessary to this end that he be advised of every "but for" consequence which follows from a plea of guilty.

*Id.* at 268.

Here, the petitioner asserts that "but for" his understanding that he would completely avoid a state prison sentence he would not have plead guilty. Even if this assertion were accepted as true, the alleged misunderstanding involved a collateral consequence of the agreement. The conclusion that the misunderstanding does not suffice to avoid the plea is particularly compelling in view of the fact that petitioner was committed to the state prison only after violating the conditions of probation. Moreover, the dangers of permitting a criminal defendant to withdraw a guilty plea on such a basis are apparent. An accused could safely enter a plea of guilty to test the results, and, if unsatisfactory, subse-

quently allege that he misunderstood the terms of the plea bargain, withdraw his plea, and begin anew without great difficulty. *See, e.g.,* United States v. Weese, 145 F.2d 135 (2d Cir. 1944); Kinney v. United States, 391 F.2d 901 (1st Cir. 1968). As the court in *Kinney* commented:

> [A] party cannot be permitted to try the attitude of the court like a boy sticking his toe in the water and then withdraw if he finds it not to his liking.

391 F.2d at 902.

### III

In arguing that his guilty plea was involuntarily made, petitioner distinguishes three situations involving guilty pleas induced by representations of plea agreement:

1. Defendant pleads guilty in reliance upon a promise by a state officer that he will receive a lighter sentence and the promise is not kept. Here, the guilty plea will be set aside as involuntary. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

2. Defendant pleads guilty in reliance upon assurances of his own attorney that he will receive a certain sentence but the attorney does not indicate that the assurance is based upon any promise or commitment by a responsible state officer. *E.g.,* People v. Hines, 66 Cal.2d 343, 57 Cal.Rptr. 757, 425 P.2d 557, 563 (1967) ("Mere advice or assurance by defense counsel will not vitiate a plea entered in reliance thereon.") A defendant could not reasonably understand such an assurance by his own counsel to be binding upon the state and the courts have, therefore, refused withdrawal of plea under these circumstances.

3. Defendant pleads guilty in reliance upon his attorney's representation that a responsible state officer has promised that if he pleads guilty he will receive a lesser sentence and this purported promise is not kept.

In this latter situation, some courts have set aside the plea as involuntary and other courts have required corroborative acts by a state officer. *Compare* United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y.1967) and Domenica v. United States, 292 F.2d 483, 485 (1st Cir. 1961) (dicta), *with* People v. Gilbert, 25 Cal.2d 422, 443, 154 P.2d 657, 667–68 (1944). The court in *Mancusi* stated that "A guilty plea induced by a mistaken belief that a binding plea agreement had been made is invalid even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief." 275 F. Supp. at 516.

Petitioner alleges that his plea was induced by representations of his counsel as in situation number 3, and that if corroborating acts are required plaintiff's observation of the conversation between his attorney and the prosecutor constitutes such an act. It is, however, unnecessary to decide these questions in view of my findings that the promise allegedly made by responsible state officers was kept in all material respects and that the transaction was fair and reasonable. This is not a case in which defendant's attorney was responsible for a mistaken belief that a binding plea agreement had been made, compare United States v. Shneer, 194 F.2d 598 (3d Cir. 1952), nor one of "grave misunderstanding" induced solely by defense counsel. *See* United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 249 (S.D.N.Y.1966). Nor does this case fall within Professor Moore's view that a "[p]lea induced by defense counsel's false representations to a defendant as to what, if anything, prosecutor promised * * * should be vacated, regardless of the prosecutor's lack of complicity." 8 Moore's Fed. Practice ¶ 11.05 [4] (Supp. 1967). Rather, the most that petitioner has shown in this case is that he subjectively misunderstood the full import of the representation made to him by his counsel. Whether this misunderstanding was actual or feigned, contemporaneously experienced or arose as a matter of realization or afterthought, the result would be the same under the circum-

stances of this case. Such a misunderstanding would be neither reasonable nor of sufficient moment to justify setting aside the plea.

The petition for a writ of habeas corpus is denied and the action dismissed.

The diligent and able efforts of assigned counsel for plaintiff should be specially noted. His steadfast services on behalf of the petitioner without fees are in the best traditions of the bar.