GOVERNMENT OF the VIRGIN
ISLANDS, Plaintiff,

v.

Juan Cruz MORALES, Defendant.

Misc. No. 3/1971.

District Court, Virgin Islands,
D. St. Croix.

Oct. 26, 1972.

Julio Brady, Asst. U. S. Atty., Christiansted, St. Croix, V. I., for plaintiff.

Bryant, Costello & Burke, Christiansted, St. Croix, V. I., for defendant.

## MEMORANDUM OPINION

WARREN H. YOUNG, District Judge.

Petitioner, now serving a sentence of 35 years,[1] moves for the second time under the provisions of 28 U.S.C. § 2255, to vacate the judgment of conviction entered upon his plea of guilty on the ground that his plea was involuntary.[2] The first petition was docketed on September 7, 1967, at which time

---

1. The movant was sentenced on June 4, 1964 to serve 30 years for murder and 5 years for escape from lawful custody.

2. There may be some question whether resort to the § 2255 remedy can be allowed in this case. The statute provides that a motion to vacate is applicable to:

 A prisoner in custody under sentence of a court established by Act of Congress

 . . . .

 28 U.S.C. § 2255. The proceeding under this section is a statutorily compelled substitute for habeas corpus and is ap-

plicable to federal prisoners only. In this narrow instance it appears that the section applies. The petitioner was in federal custody and the District Court of the Virgin Islands was established by an Act fo Congress. Revised Organic Act of 1954 § 21, 68 Stat. 506 (1954). I believe this position is compatible with positions taken under similar circumstances by territorial courts. *See* United States v. Meyers, 139 F.Supp. 724, 16 Alaska 214 (D.C.Alaska 1956) and United States v. Geise, 158 F.Supp. 821, 17 Alaska 461 (D.C.Alaska 1958).

the defendant was a federal prisoner incarcerated at Lewisberg, Pennsylvania. On May 14, 1968, the District Judge summarily denied the petition for relief. One year later the defendant sought to obtain a transcript of the proceeding at which the guilty pleas were rendered. That motion was granted and this Court also appointed an attorney to represent the defendant. An evidentiary hearing was held on May 9 and 12, 1972.

On March 3, 1964, the jury trial of petitioner and one other, Rafael Rivera, commenced on the charge of First Degree Murder. At the time of trial, petitioner was 18 years of age, had completed his formal education through the second grade, was conversant in Spanish but was limited in his ability to speak, read or understand English. For that reason interpreters were present during the trial. Prior to trial, one of the four other suspects, accused of the crime along with petitioner, pleaded guilty.[3] In the midst of the trial, petitioner and Rivera withdrew their pleas of not guilty and entered pleas of guilty to murder in the second degree.

The essence of petitioner's present claim is that his plea of guilty was not voluntary, that it was made in an atmosphere of ignorance and apprehension which grew out of the fact that he did not comprehend the full nature of the proceedings against him. At the evidentiary hearing, petitioner, his co-defendant, petitioner's trial attorney and the interpreters testified. From that testimony the following facts are culled. Shortly after the victim's widow testified as to her identification of the assailants, petitioner's attorney requested a recess. During the recess, the possibilities of rendering a plea to a lesser included offense were discussed with the prosecutor. Because there was a question as to whether the crime was first or second degree murder, the prosecutor indicated that he would move to reduce the charge to murder in the second degree if petitioner would plead guilty to such reduced charge. Petitioner's counsel testified that he and the interpreter conveyed to petitioner the subject of the discussion. Counsel further expressed to petitioner his view that the Government's case appeared to be very strong and did recommend the guilty plea to the lesser offense. The attorney's memory regarding the incident was not precise, but he did testify that he made no promises but merely communicated to defendants the fact that there was a high degree of probability that they would receive a sentence of less than life imprisonment if they tendered a guilty plea to the lesser charge. The interpreter was present during the discussion between counsel and clients and relates that he translated to defendants the attorney's explanation that the lesser offense of second degree murder carried a lesser penalty and that it had no mandatory life sentence. Counsel further testified that after his clients received his recommendation they discussed it in Spanish among themselves and with the interpreter. This was all done in the space of less than half an hour.

Petitioner testified that an interpreter was present during the discussion with his counsel relating to the plea; that he had been told by the judge that if convicted by the jury of first degree murder, he would get a mandatory life sentence; that the prosecutor informed him that the penalty for second degree murder was 20 years to life. He further testified that, as the trial unfolded, he became increasingly apprehensive that he would be convicted of first degree murder; that he entered a plea of guilty to second degree murder on the chance that he would get a more lenient sentence. Finally, he stated that because of his incompetence in the use of the English language, he did not understand much of what had transpired at the trial. No interpreter sat at the defense

3. The case originally involved the five accused, but on the day in question only Morales and Rivera were being tried.

table, though when the judge addressed the defendants his remarks were translated to them. Both of the defendants stated that they pleaded guilty to murder second degree because a fellow prisoner (one of the original five accused of the crime), told them that for murder second they would get a sentence of no more than 12 years. They also admit that the interpreter explained to them the significance of changing the plea but they insist that they were not advised of the true maximum possible penalty for murder second. Finally, petitioner testified that it was he who decided to change his plea on the basis of his understanding that he might get a lighter sentence. No one threatened him; no promises were made to him.

 The record indicates that the plea of guilty was entered shortly after the recess. As noted above, the plea was entered March 3, 1964, which is two years before the amendment to Rule 11 of the Federal Rules of Criminal Procedure. Amended Rule 11 now requires the trial judge personally to quiz the defendant about the nature and effects of his guilty plea. Were this case to be under the amended Rule 11, it would be governed by the holding in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1968) and perhaps reversal would be appropriate. However, the rule of *McCarthy* is not retroactively applicable. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). Nonetheless the test for scrutinizing guilty pleas which was previously fashioned by the courts and has been reiterated many times since *McCarthy,* is that guilty pleas must be a voluntary expression of the defendant's own choice. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940). In Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) it was stated:

> Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.

The transcript in the case *sub judice* did not satisfactorily show the extent of information which defendant had at his disposal prior to changing his plea. The following extract from the transcript illustrates this fact:

> THE COURT: ". . . I want to ask a few questions through the interpreter, Mr. Bough."
>
> (The Court thereupon questioned the defendants and received the answers through the interpreter as follows:)
>
> THE COURT: "Ask the two defendants, do they understand that their counsel has asked permission to withdraw the plea of not guilty of murder in the first degree, upon which they are being tried at the present time by a jury, and enter a plea of guilty of murder in the second degree. Do they understand that? Ask them."
>
> THE INTERPRETER: "Yes, sir; they understand."
>
> THE COURT: "Are they satisfied?"
>
> THE INTERPRETER: "Yes."
>
> THE COURT: "Do you understand? I want you to understand that this Court in accepting that is in no way committing itself as to what the penalty will be. Do you understand that? Do you understand that?"
>
> THE INTERPRETER: "Yes."

Trial Transcript, March 3, 1964, at 162.

██ The trial court's examination was perfunctory and narrow; the answers, truncated. It is because of that scant record that an evidentiary hearing was granted in order to determine the

basic question of voluntariness of the guilty plea. It is from the testimony given at the evidentiary hearing that I am satisfied that petitioner's guilty plea was voluntarily and knowingly made.

Petitioner argues that his guilty plea was entered without a purpose and full understanding of the reduced charge and its consequences, or, to put it bluntly, the possible range of sentencing. In support of the argument that this lack of full understanding renders his guilty plea unacceptable, petitioner cites Julian v. United States, 236 F.2d 155 (6th Cir. 1956). In *Julian* (a selective service case), the court's finding of guilty was premised upon the fact that the defendant's attorney had in the court trial stipulated away any defense that the defendant might have had by admitting that the defendant had knowledge of the selective service order to report for duty and that he intentionally failed to comply. Defendant was not asked about those material facts nor did he acquiesce to the stipulations offered by counsel. That is not the case here. The record of petitioner's trial shows that upon granting the prosecutor's motion to reduce the charge from first to second degree murder, the trial court addressed itself directly to the defendants. During that brief colloquy, the judge explained that the request to withdraw their original pleas was made by their counsel. Petitioner and his co-defendant then indicated that they not only understood the request as made but that they acquiesced in it. The record below does not show that counsel entered the plea on behalf of his clients. In *Julian,* the defense counsel in essence admitted his client's guilt and no inquiry by the court was made of the defendant. The case before me is distinguishable on the very point which gave *Julian* its strength.

■ Petitioner related in the evidentiary hearing that as the trial progressed, the thought of a mandatory life sentence weighed heavily on his mind and was one of the factors which prompted entering his plea to the lesser charge which did not carry a mandatory sentence. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), it was held that a plea of guilty entered solely to avoid the possibility of the death penalty is not, for that reason alone, invalid. In so ruling, Mr. Justice White wrote:

> "We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by a defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."

Brady v. United States, *supra*, at 751, 90 S.Ct. at 1470. *Brady* spoke to the issue of giving up constitutional rights, such as a jury trial, when faced with a possible death penalty. It concerned the fact that the defendant, before entering a plea, would have to speculate as to the strength of the prosecution's case. The case *sub judice* is clearer. Petitioner had competent counsel through whom he was able to acquire, as the trial progressed, information as to the overwhelming strength of the prosecution's case. He did not need to speculate as to the probable outcome of the trial. His decision to switch pleas was to secure for himself a lesser penalty in the face of an educated prediction as to a verdict on the murder first charge. Changing to a guilty plea under such circumstances is acceptable so long as there is no implication of agreement between the court and the defendant. Swanson v. United States, 304 F.2d 865 (8th Cir. 1962), cert. den., 371 U.S. 894, 83 S.Ct. 194, 9 L.Ed.2d 127; United States ex rel. La Fay v. Fritz, 455 F.2d 297 (2d Cir. 1972). From the transcript, I find no implication of any agreement between the defendant and the court. In fact, from the little that the court did say, I find that the court clearly negated being bound to any implied agreement. That the plea was the result of petitioner's

own choice is best supported by petitioner's own words at the evidentiary hearing: "I decided I would see if I could get twelve years." (See Transcript of Hearing dated May 9, 1972, at 37.)

In sum, I conclude that as a matter of law and upon the facts presented in the transcript of the trial and in the testimony at the evidentiary hearing that petitioner's guilty plea was voluntary and was made with full knowledge of the consequences and range of penalty. Petitioner should not be allowed to withdraw his plea merely because the information which he received from a friend and cohort as to the probable sentence for second degree murder did not coincide with the sentence actually imposed.