**UNITED STATES of America**

**v.**

**Clarence Duke McGANN, Henry John Foster and Earl Kiil Smith, also known as Earl James Smith.**

**Cr. A. Nos. 23017, 23023.**

United States District Court
D. Maryland,
Criminal Division.

March 9, 1962.

See also 200 F.Supp. 633.

---

**2.** See Harger v. Jenkins, 17 Pa.Super. 615 (1901).

946

Jos. D. Tydings, U. S. Atty., Stephen H. Sachs, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

No court hearing, opinion on written petition.

CHESNUT, District Judge.

On August 18, 1954 the Grand Jury for this District filed an indictment against the three defendants above named charging them with the armed robbery of a branch of the First National Bank of Southern Maryland at Andrews Air Force Base, whereby, on August 14, 1954 the bank was robbed of over $124,000 in money. The three defendants attempted to escape in a stolen automobile which they had driven from outside of Maryland to the bank. Almost immediately after leaving the bank a police officer stopped the automobile and arrested the driver, McGann, on a traffic charge. While he was being detained and "booked" in the police station the other defendants, Smith and Foster, escaped in the automobile taking all the stolen money with them. They were not arrested until several months thereafter. In the meantime McGann, after the appointment of counsel and a hearing in court, had been sentenced to twenty years in prison. He has filed from time to time thereafter at least five separate motions or petitions for vacation of the sentence which petitions were severally overruled by this court and from two of which he appealed to the Court of Appeals for the Fourth Circuit, where the orders of this court were

affirmed, and on at least two of the several occasions application for certiorari was denied by the Supreme Court of the United States. 249 F.2d 431, cert. den. 356 U.S. 923, 78 S.Ct. 708, 2 L.Ed.2d 718; D.C., 161 F.Supp. 629 (no appeal taken); 261 F.2d 956, cert. den. 359 U.S. 974, 79 S.Ct. 891, 3 L.Ed.2d 841.

Smith and Foster having been arrested and by due proceedings transferred to Baltimore, appeared in this court on February 7, 1955 for arraignment. Counsel for them had been previously appointed by the court, Mr. Paul C. Wolman, Jr., an experienced trial attorney familiar with federal criminal procedure because some time theretofore he had been acting for some years as an Assistant United States Attorney for this district. The defendants separately pleaded guilty and a very extended hearing of the whole case against them was had in court before each was sentenced to imprisonment for twenty-five years on the charge of armed robbery, and cumulatively for two years on their plea of guilty to a second indictment for interstate transportation of a known stolen automobile. The typewritten transcript of the hearing contains 71 pages, as reported by the then court reporter, Mr. Harry M. Levine. This transcript has heretofore been filed with the Clerk of this court on June 26, 1958 in connection with a subsequent proceeding for vacation of sentence filed by Earl Kill Smith.[1]

Earl Kill Smith was first sent by the Marshal of this Court to the federal penitentiary at Atlanta, Georgia, along with his co-defendant Foster. No direct appeal was taken from the sentence; but on April 8, 1957, Smith filed a petition for vacation of sentence or a reduction of the amount thereof from 25 years to 20 years, contending that the fourth count of the armed robbery indictment

[1]. The original of the transcript was filed with the Clerk on June 26, 1958, but as the record in the case of Smith has twice been forwarded on appeal to the Fourth Circuit, and once at least to the Supreme Court of the United States, the Clerk of this court has not been able to locate it in his extensive file, but a record entry in the file shows that the transcript was actually specially filed with the Clerk on June 26, 1958. While the original transcript has not been located, the United States Attorney has located in his file a carbon copy of the transcript which has now been filed with the Clerk.

against him was legally insufficient and that it was the only one which authorized a sentence of 25 years. For reasons stated in a written opinion filed with the clerk (D.C., 150 F.Supp. 463) his petition based on F.R.Cr.P. Rule 35, 18 U.S. C.A., was overruled and on appeal the order of this court was affirmed. Smith v. United States, 4 Cir., 250 F.2d 37, cert. den. 355 U.S. 965, 78 S.Ct. 555, 2 L.Ed.2d 540.

On May 12, 1958 Smith filed a second petition (Nominally under the All Writs Section, 28 U.S.C.A. § 1651(a), but more properly under 28 U.S.C.A. § 2255). His contention was that his plea of guilty more than two years previously had been the result of coercion and duress by officials of the F.B.I. upon his arrest in Texas in December 1954. On this petition I directed Mr. Pierson, the then United States Attorney for Maryland, to show cause why the relief prayed for should not be granted and in response a long and detailed cause was shown containing records of various court proceedings in and connected with the arrest of Smith and his subsequent transfer by the United States Commissioner to this district. After an extensive review of all the prior proceedings in this court in the case of Smith, I wrote a long and detailed opinion giving a complete history of the case up to that time, and concluded for the reasons stated that the petition should be and was then dismissed. D.C., 163 F.Supp. 417. Smith took an appeal to the Fourth Circuit where the dismissal of this second petition was affirmed, Smith v. United States, 262 F.2d 590. It appears from the Clerk's file here that an attempt was made by Smith to apply to the Supreme Court of the United States for certiorari, but apparently it was not perfected.

On January 16, 1962 Smith has now filed a third petition for vacation of sentence imposed on February 5, 1955. The principal ground stated in this third petition is that he was not mentally competent at the time of his hearing. Again I directed the present United States Attorney for this District to show cause why the relief prayed for should not be granted. He has filed his answer to this show cause order and the petitioner has now filed a so-called "traverse" to this reply. After receiving the respondent's answer to show cause, I inquired from the United States Attorney whether he had any report from the federal prison authorities as to the mental condition of Smith. In reply I have now received a detailed report of the medical and mental examinations of the prisoner during his confinement and up to the present time. It, now filed in the case, shows in substance the following: Smith was first sent to the federal penitentiary at Atlanta, Georgia, but shortly thereafter, to separate him from Foster who was also in confinement there, was transferred to Leavenworth. At Leavenworth he was given periodic semi-annual or annual physical and mental examinations and the respective reports chronologically arranged show as follows: At Leavenworth the periodic reports show no indication of any mental disorder while there; but in the latter part of 1956 he made a serious and planned attempt to escape jointly with some other prisoners, and he was then transferred for more secure confinement at Alcatraz. The medical and mental report of May 23, 1958 from Alcatraz contains the following: "This inmate is in good general health. There are no hospital admissions on record since his last review, his record shows a history of arrested T.B. Presently scheduled for another chest X-Ray. He is not a frequent caller at sick call and seems to be free of any serious emotional maladjustment."

The first indication from any of these periodic examinations of Smith as to any mental unbalance was at Alcatraz under date of August 14, 1958 where, after he had had a fight with another prisoner, the report said: "Impression: Anxiety reaction in an individual with an underlying paranoid personality."

From then on the mental or psychiatric examinations indicated progressive lack of mental balance until in April 1959 he was transferred for mental treatment to the Government Hospital at Springfield, Missouri.

In the covering letter sent by R. O. Settle, M.D., Warden at Springfield, to the United States Attorney here dated February 23, 1962, and enclosing the reports above mentioned, it now appears that the psychiatric opinion of the Springfield doctors is that Smith is not now mentally competent to understand the legal features of a court proceeding. For this reason I consider it unnecessary, and indeed quite undesirable, to have Smith present at a hearing on his third petition. 28 U.S.C.A. § 2255 in part provides: "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."

The judicial question thus presented is whether, if a prisoner while mentally competent at the hearing of his case and represented by experienced trial counsel, pleads guilty and in response to inquiry as to whether he had anything to say contrary to the imposition of sentence, was then apparently .entirely mentally competent, he is entitled to have the sentence vacated for mental disorder first discovered thereafter by the medical authorities many years after the sentence was originally imposed, and now for the first time brought to the attention of the court. For the reasons herein stated I conclude that there was no lack of due and proper judicial process in the imposition of the sentence.

When Smith appeared for arraignment on February 7, 1955 and pleaded guilty, an extended hearing was given by the court not only to witnesses for the prosecution but also full opportunity was given to defense counsel and the defendants personally, including Smith particularly, to relate to the court the nature and extent of his participation in the offense. In response to an inquiry from the court to Smith personally, he subsequently gave a detailed account of his participation in the robbery and his subsequent flight and a circumstantial account of his disposition of the one-third portion of the proceeds of the robbery, Foster having kept his one-third and also, as the latter said, the one-third share to be given to McGann. This de-tailed account of Smith's personal movements during the several months before his arrest occupied about ten pages of the transcript (57 to 65).

In the extended review of the history of the case on his second motion for vacation of sentence (163 F.Supp. 417) I stated the impression Smith had made upon me on February 7, 1955; and after reviewing the transcript of the proceedings referred to, I there said (p. 420): "From the defendant's statement I found that he was 25 years of age and appeared to have at least a fair education, that he was intelligent and that his whole account of the matter was not only clear and coherent but consistent with other facts and circumstances of the case which had been developed by other witnesses in his presence and hearing."

In Smith's first petition for vacation or modification of sentence, he made no suggestion or contention that he was not fully and amply competent and nothing whatever was brought to the attention of the court by any of the parties or witnesses at the hearing to indicate in any way any need for a mental examination. The federal statute now provides that the United States Attorney may upon motion to the court have an inquiry made as to the mental condition of a defendant; but apparently nothing to indicate the desirability of that in the particular case occurred to the then Assistant prosecuting attorney, Mr. Herbert F. Murray, or to Mr. George C. Doub, then United States Attorney. It will also be noted from the various opinions in the McGann case that the then appointed attorney for McGann did make such a request which was granted by the court; but after the psychiatric examination was furnished to counsel, the original plea of not guilty was withdrawn and a plea of guilty was entered. It is clear enough from the transcript that Smith's experienced trial counsel, Mr. Wolman, appointed by the court, after conferring with the prisoner saw no indication of the necessity for such an inquiry, and Smith's personal lucid and extended account of his whole participation in the matter and his subsequent journeying

after escape and before final arrest, certainly gave no indication of such a necessity to the court. See 18 U.S.C.A. § 4244.

Again, in Smith's second petition for vacation of sentence, while coercion and duress from F.B.I. Agents was alleged, nothing was suggested by Smith as to lack of mental competency. And it is also important to note that in several periodic physical and mental examinations of Smith while in custody from February 7, 1955 until August 1958, there is no indication whatever of any mental unbalance.

Section 2255 provides: "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

In my opinion, Smith's present ground for complaint of mental unsoundness at the time of his trial is sufficiently similar to his second petition based on coercion and duress to be within the provision of section 2255.

Smith's present third petition also complains that he has not received due process in the failure of the present medical authorities to sooner properly diagnose his present mental condition; but the progress of the medical reports in the matter which have been filed by the United States Attorney at the request of the court, show clearly that they had no reason for several years after his original confinement to question his mental competency. When first discovered in 1959 he was transferred to the mental hospital in Springfield. See 18 U.S.C.A. § 4245.

Smith also now contends again that his sentence of 25 years was in excess of the statutory authorization by reason of the legal insufficiency of the fourth count of his indictment; but it is unnecessary to now review that as it was finally adjudicated in the Fourth Circuit (262 F.2d 590).

It is also my opinion that the records and proceedings of Smith's case in this court show conclusively that he is not entitled to a further hearing in court. I note that in a very recent case in the Supreme Court (Machibroda v. United States, U.S.Ohio, 82 S.Ct. 510) it was held that although there was no direct appeal from a federal criminal sentence, the petitioner could re-open the case under 28 U.S.C.A. § 2255, and was entitled to a hearing thereon where he alleged that his plea of guilty was due to a definite promise by the prosecuting attorney for the Government that if he did plead guilty his sentence would be not more than 20 years; but, as was pointed out in the opinion by Mr. Justice Stewart, the records of the court were not conclusive in the case because the promise referred to did not appear in the court proceedings but was based on an alleged promise given outside of court and before the plea was entered. In the instant case, however, the contrary appears by what actually occurred in court at the time of the sentence on February 7, 1955, all of which has been reported in a transcript of the hearing at the time the defendant pleaded guilty, and particularly gave his account of his whole participation in the matter and the disposition of the proceeds of his share of the robbery, about $41,000.

I do not think a further hearing in court, either with or without the petitioner, is necessary or practicable on the question of Smith's mental competency now nearly seven years after his original hearing and sentence. In the absence of specific obviously unusual events tending to indicate, even to a layman, unsound mentality, legal criminal responsibility for acts is necessarily a problem for expert psychiatrists. In his present petition Smith does not allege any overt acts tending to indicate mental incompetency at or before his hearing. And it appears from the psychiatric examinations while in prison he on one or more occasions specifically denied any history of mental incompetency, which was first indicated to the psychiatrists at Alcatraz in August 1958. The question is whether Smith in February 1955 was mentally incompetent. Now more than

seven years later the District Attorney and his Assistant at that time, have been out of office for some years. Mr. Wolman, the court appointed attorney who represented Smith, is now an active practicing lawyer in Baltimore. He says he did not ask for a psychiatric examination for Smith because from his conferences with him there was nothing in the whole case to cause him to think there was any need for such a request. But quite apart from this and more importantly, it is the transcript of what occurred in court at the time that seems to me to conclusively show that the petitioner is not entitled to relief. This transcript is a record of the court and not something that has occurred outside of court either before or after sentence. It appears now that it would not be desirable from any point of view to bring the petitioner here from Springfield where he is obtaining the best possible psychiatric attention, and I can see nothing to be accomplished by a hearing in this case without the presence of the petitioner. See Machibroda v. United States, supra; Hill v. United States, 82 S.Ct. 468; United States v. McNicholas, Jan. 5, 1962 (4th Cir.), 298 F.2d 914.

Of course the court learns with regret from the recent psychiatric reports that Smith is not now mentally competent; but it also appears that he is having the best and highest form of psychiatric care which can be furnished by the United States Government at its mental hospital at Springfield, Missouri. From the purely humanitarian aspect of the matter it seems quite clear that Smith would not be helped, but rather hurt, by any present change in the sentence by this court which would result in his release. But however that may be, this court must deal with the matter from the standpoint of what constitutes legal constitutional features of due process. The court has no proper function or power the commutation or change in the sentence except for properly applicable legal reasons. It appears from the classification report at Atlanta that the prisoner would first be possibly eligible for parole on February 5, 1964.

For these reasons I conclude that this third repetitive petition of Smith for vacation of sentence imposed February 7, 1955 should be and is hereby *dismissed* this *9th* day of March 1962. The Clerk is instructed to send a copy of this order and opinion to the petitioner.