RICHARD CARLIE HOOTON v. STATE OF ARKANSAS

5380                                    432 S.W. 2d 766

Opinion Delivered October 21, 1968

426

*Howell, Price & Worsham* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

LYLE BROWN, Justice. Appellant instituted proceedings in the trial court under our Criminal Rule I. He appeals from that court's refusal to vacate sentences imposed in 1966. He alleges that his guilty pleas were induced by violations of his constitutional rights. Specifically, he contends that the pleas were coerced by (1) threats and promises of leniency, (2) mistreatment while in jail awaiting trial, and (3) possession by the Pulaski County authorities of a statement taken by the FBI without Hooton being advised of his rights.

In September 1964, Hooten and his confederate were arrested in Florida with a stolen car, for which they were sentenced for violation of the Dyer Act. The body of the car owner was found in Pulaski County. That resulted in the questioning of the two men by the FBI, following which they were brought to Little Rock and charged with the death of the car owner. While Hooton was incarcerated, a jailer was viciously attacked while the two men were trying to escape. That incident resulted in a charge of assault to kill. After a mistrial as to Hooton's confederate and a number of other factors resulting in delay, both men entered pleas of guilty to murder and to assult to kill. They received concurrent sentences of twenty-one years each. Hooton's appeal stems from those sentences.

Under the holding in *Machibroda* v. *United States,* 368 U.S. 487 (1962), Hooton urges us to set aside the pleas of guilty. The facts in that case are substantially foreign to the facts here. But irrespective of the facts, that decision pronounces the law to be that a guilty plea induced by promises or threats is void. *Machibroda* cites with approval *Kercheval* v. *United States,* 274 U.S. 220 (1927), where it is said that a plea of guilty is as conclusive as a jury verdict. For that reason and out of just consideration for the accused, "courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." We approach appellant's three points in light of the principles set out in the two cited cases.

*Threats and Promise of Leniency.* Petitioner claims that he was told his co-defendant would receive capital punishment unless he (Hooton) entered a plea of guilty; and further, that if Hooton would plead guilty, the latter would get only twenty-one years. We quickly dispose of the threat charge. Attorney Allan Dishongh, who worked diligently with both men as their court-appointed attorney, categorically denied making any such representations to Hooten. Now as to the promise of leniency, these facts are fairly undisputed. Attorney Dishongh was informed by the prosecuting attorney that the latter would be agreeable to accepting pleas of guilty from both men, whereupon the prosecutor would recommend that the sentences of each would run concurrently. Dishongh passed this information along to the defendants for them to make the decision. Dishongh says he explained the nature of the plea and the consequences. The attorney expressed the opinion at the Rule I hearing that the offer was a good one for the defendants. They were to plead guilty to second degree murder and assault to kill and receive concurrent sentences of twenty-one years each. The practical result of the proffered compromise was that Hooton would escape the possibility

of capital punishment in return for accepting a sentence of twenty-one years.

*Alleged Mistreatment While in Jail.* Hooton testified that after being in jail for some two years, during which time he was harassed and beaten, he entered a plea of guilty to escape the close confinement and mistreatment. Jail incarceration for two years while awaiting trial is a long time. We have examined the record to ascertain the reasons. Hooton was timely brought before the court for arraignment. Upon entering a plea of not guilty by reason of insanity, he was committed to the State Hospital for observation. His first attorney obtained a delay to see if Hooten could raise money for employment of a private psychiatrist. Those facts apparently caused a delay in trial beyond two sessions of court. A severance was asked for and granted; Hooton's companion was tried and a mistrial resulted. Hooton became dissatisfied with his attorney and another was appointed. About midway in their incarceration Hooton and his companion attempted an escape which resulted in new charges of assault with intent to kill the jailer. The recited factors naturally caused numerous delays, particularly in a court with a congested docket. We are convinced that the delay of two years was mostly of Hooton's own making and certainly there is no evidence that the State was dilatory in bringing him to trial.

Hooton testified to numerous acts of physical mistreatment and was corroborated in some respects by his companion and another prisoner, both being returned from the penitentiary to testify. Petitioner represented himself as a man of nonviolence. For example, he described the altercations with the murder victim and the jailer, but he insisted that all the violence was committed by Hooton's companion. Those statements are inconsistent with the several joint ventures of lawlessness of the two men and doubtless so impressed the experienced trial judge. Furthermore, two jailers and

two sheriff's deputies, whose experiences in attending prisoners covered the full period of incarceration of Hooton, denied having mistreated the prisoners or having seen evidence of mistreatment administered by others. In fact it was testified that Hooton and his companion were good prisoners and gave trouble only once. That involved the attempted escape. The prisoners were on several occasions removed from their cells, taken to a telephone, and allowed to make long-distance calls. In the attempted escape the State's evidence showed that one of the jailers was ''beaten, stomped, and stabbed,'' and temporarily blinded in one eye. That jailer was able to retrieve his gun and stop the escape. The manner in which the jailer held his temper is not only commendable but is corroborative of the State's witnesses' denial of mistreatment.

*Hooton's Statement to the FBI.* Before Hooton was transferred to Pulaski County for prosecution, a written statement concerning the homicide was taken by the FBI and forwarded to the prosecuting attorney. In that statement Hooton maintained that his companion ''was the man that strangled him, struck him, and rolled him.'' Hooton denied having touched the victim. The only action to which Hooton confessed was the theft of the victim's car. Petitioner maintains that the statement was taken without his being advised of his constitutional rights and that his knowledge that the authorities in Pulaski County possessed the statement was a coercive factor in making involuntary his plea of guilty to murder. Such reasoning is wholly illogical and unimpressive. First, if the statement was taken without constitutional warnings, it could never be used against him; second, the statement was in fact a denial of complicity in the murder; and third, it was never presented to the trial court which imposed the sentences. Since the statement was never used against him the formalities of advice to the accused recited in *Miranda* are not of particular importance. *Blake* v. *State,* 244 Ark. 37, 423 S.W. 2d 544 (1968).

The trial court filed its findings of fact and conclusions of law reflecting a comprehensive evaluation of the proceedings. The findings of fact there made **are** amply supported by the evidence and, after examing the record, we conclude that those findings should be affirmed.

It is so ordered.