**Ralph M. GARNER, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 881.**

United States District Court
E. D. Tennessee,
Winchester Division.

Dec. 17, 1968.

B. B. Guthrie, Chattanooga, Tenn., (appointed) for petitioner.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for respondent.

### MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The petitioner Mr. Garner claims that he is in the custody of authorized penal representatives of the respondent in violation of the Constitution of the United States, 28 U.S.C. § 2241(c) (2), and has applied to this Court for the issuance of the writ of habeas corpus. An evidentiary hearing was conducted in Chattanooga, Tennessee on September 25, 1968, at which the petitioner appeared personally by writ of habeas corpus ad testificandum and through appointed counsel. Decision on the application has awaited the provision of transcripts of the records of this Court on the petitioner's arraignment of January 16, 1967 and sentence of January 30, 1967 in criminal action no. 1405, this district and division. These were received December 10, 1968.

The specific claim of the petitioner for present adjudication is that he was induced to involuntarily enter a plea of guilty to the offense of working at an unregistered distillery by assurances of his court-appointed attorney and, through the latter, of the prosecuting attorney, that any term of incarceration to which he might be sentenced therein would be made to run concurrently with a term of incarceration he was then serving in a Tennessee prison, and that same would be fully served by the time of the completion of the state sentence he was then serving.

Testifying in his own behalf, Mr. Garner stated that he was transferred on the completion of his sentence in a Tennessee state prison to a federal penal institution. He stated that, at the time of his arrest for violating in five counts the federal internal revenue laws relating to liquor, he was free on parole on a felony conviction, under supervision of

authorities of the state of Tennessee; that, as a result of his arrest herein by federal authorities, his state parole status was revoked, and he was returned to a Tennessee state prison; that he was brought before the United States District Court for the Eastern District of Tennessee, Winchester Division, by a United States marshal on January 16, 1967, where he was represented by Charles S. Ramsey, Jr., Esq., an attorney appointed for that purpose by a United States district judge.

Mr. Garner was interviewed in a detention cell by his attorney. He advised his attorney that he intended to plead not guilty of the charges in all five counts of the indictment returned against him. In a subsequent interview, he states Mr. Ramsey inquired " * * * if I would consider pleading guilty to the third count * * *." Mr. Garner testified that he replied: "If I could get it running concurrent with my state time. * * *" Afterward, according to Mr. Garner, his attorney returned and reported to him that the assistant United States attorney, who was handling the prosecution, had said he would recommend that the sentence on the third count be probated " * * * or run at the same time with my "state time

* * *", if a plea of guilty was interposed to the third count; and that the trial judge " * * * usually did whatever the prosecuting attorney recommended * * *" in such matters.[1]

Mr. Garner admits that he read the contents of his petition to enter a plea of guilty to that count, which had been prepared for his signature and presentation to the Court by Mr. Ramsey; and that he inquired of Mr. Ramsey concerning such contents and was told by his attorney that this was " * * * just a procedure * * *" which the presiding judge of this Division always requires before accepting any guilty plea. He testified that his guilty plea to the third count of the indictment was entered by the Court; that the Court then released him from custody on the remaining four counts of the indictment returned against him on motion by the prosecuting attorney for entry of a nolle prosequi as to each such count; and that he was referred for presentence investigation and returned to the state prison.

He testified that he was returned again to the same court by a United States marshal on January 30, 1967; that the prosecuting attorney recommended that the Court place him on probation;[2] that the Court responded [3] that he " * * *

---

1. In actual practice before the undersigned judge, none of the prosecuting attorneys of this district make recommendations to the Court at sentencing, except in very rare situations, or when the Court requests, also on rare occasions, a recommendation.

2. The verbal participation of the prosecuting attorney Mr. Scott, in that proceeding was as follows: "THE COURT: 'Mr. Scott, will you present whoever knows about this, please?' MR. SCOTT: 'Special agent Childers, will you come forward?'"

3. After appointed counsel for Mr. Garner had requested the Court to consider " * * * possibly granting of a lengthy probation sentence which will run concurrently with the time he [Mr. Garner] will spend in the state penitentiary * * *", the Court responded: " * * * The Court feels that probation should not be considered for this man,

because he was under probation at the time this violation occurred, and his record seems to be such that he does not have much stability. The Court does hope, when he has paid his debts to Society, both the state and federal, that he will get out of Grundy County, if that is his problem—which may or may not be—and at least become a law abiding citizen.

It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for a term of one year, and that the defendant shall become eligible for parole under 18 U.S.C. § 4208(a) (2) at such times as the Board of Parole may determine.

"Mr. Garner, as far as this sentence is concerned, the parole board can let you out any time. They may or may not take into consideration that you have been in the state penitentiary for some period of time, but that is entirely up to them. The Court is just giving them the authority to

couldn't or wouldn't * * *", and sentenced him to the custody of the Attorney General or his authorized representative for the maximum term of incarceration of one year; that the prosecuting attorney [4] then recommended that the Court make the sentence imposed run concurrently with the sentence he was then serving in the state prison; and that he left the courtroom, understanding that such sentence had been made to thus run concurrently with the sentence he was then serving in the state prison.

Mr. Garner testified, after he left the courtroom following his sentence, that Mr. Elmer Disspayne, the United States marshal for the Middle District of Tennessee, advised him that his sentences had not been ordered to run concurrently; that he again consulted his attorney, who advised him that unless the sentences were to run concurrently, he would be so advised within two weeks; and that he received no such advice and only learned much later that he is required to serve his federal sentence after completing his state sentence.

Testifying for the respondent, Mr. Ramsey stated that he did interview Mr. Garner initially as the latter claims; that he then made an investigation of the facts, which convinced him that photographic proof would be presented against Mr. Garner which would result certainly in his conviction on the third count of the indictment; that after this discovery he returned to Mr. Garner and inquired if the petitioner would consider pleading guilty to that (misdemeanor) count, hoping that the prosecution might not insist on a trial of the four additional felony counts; that Mr. Garner replied that he would enter such a plea to such count, if same would be made to run con-

currently with the term in state prison he was then serving; that he advised Mr. Garner that he considered such a disposition impossible, because thereunder Mr. Garner would serve no time in a federal prison on any of the outstanding federal charges; but that he would convey Mr. Garner's request to the proper authorities.

Mr. Ramsey testified further that he advised Robert A. Scott, Esq., the assistant United States attorney whom he understood was handling the prosecution, of his client's wish concerning concurrency of the federal and state sentences; that Mr. Scott responded that the matter of whether the state prison would be designated as the place for the serving of any federal sentence imposed, addressed itself to the Attorney General and his authorized prison representatives; but that, if Mr. Garner did plead guilty to the misdemeanor count, Mr. Scott planned thereupon to move the Court to dismiss the remaining four counts of the indictment against Mr. Garner. This attorney testified that he reported to Mr. Garner that the authorities would not agree to his request for a concurrency of the federal and state sentences, but that he had worked out an understanding with the assistant prosecutor that the other four counts of the indictment would be "nollied" should Mr. Garner enter a plea of guilty to the third count; that Mr. Garner read the petition; that they went over every section thereof; and that he inquired if Mr. Garner understood all its contents and meaning. Mr. Scott confirmed Mr. Ramsey's above stated account of their conversation of January 16, 1967 and stated that the government had " * * * agreed * * *" to move the Court to "nolle" the four felony counts, if Mr.

handle the matter any way they may wish to. I have an idea the way you conduct yourself between now and the time you will become eligible for parole, or start serving this sentence, will have a great deal to do with their decision.

"You apparently have just been drifting aimlessly along, and if you could get some goal in mind and some pattern, and try

to do something about these children you haven't been doing anything for, they might take the matter under consideration favorably, which you would like to have done.

"Go into the custody of the marshal.

"Call the next matter, clerk."

4. See fn. 2, *supra*.

Garner pleaded guilty to the working count.

Had the Court been made aware of the "agreement" extant between the attorneys representing, respectively, Mr. Garner and the prosecution, that the four felony counts in the indictment would be the subject of a motion of nolle prosequi by the government on the condition that Mr. Garner plead guilty to the misdemeanor count, the Court would not have either accepted the guilty plea to the third count or granted the prosecuting attorney's said motion. " * * * A guilty plea, if induced by promises * * * which deprive it of the character of a voluntary act, is void * * * [and a] conviction based upon such a plea is open to collateral attack. * * * " Machibroda v. United States (1962), 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478 (headnote 2).

This is not the situation presented here, however. Mr. Garner does not claim that he pleaded guilty to the misdemeanor count, under which the maximum punishment he could receive was a period of incarceration of one year and a fine of $1,000, to escape the potential maximum aggregate sentences of 20 additional years and $40,000 in fines on the four felony counts. He claims, rather, that his guilty plea to the misdemeanor count was induced by assurances that any sentence he was given by this Court would be ordered to run concurrently with the sentence he was then serving and would have been fully served by the time his then-current state sentence was served.

" * * * A petitioner in a habeas corpus proceeding must prove his allegations by a preponderance of the evidence. * * * " Stack v. Bomar, C.A. 6th (1965), 354 F.2d 200, 202 [1], cited in Humphries v. Green, C.A. 6th (1968), 397 F.2d 67, 70 [11]. There is nothing in the record of the proceedings on arraignment and plea or sentencing to

corroborate Mr. Garner's claim of any promise made to him to induce his guilty plea to the misdemeanor count. To the contrary his aforementioned petition pointedly states his understanding that any sentence imposed on the third count of the indictment would be served *in* a *federal* prison. Further, in imposing sentence herein, the Court referred to the necessity of Mr. Garner's paying both his federal and state debts to Society; to the possible consideration by the federal parole board that he had been incarcerated for some time in a state prison, if considering him for an early parole; to the importance of his conduct between the date of sentencing therein and the time he will become eligible for parole " * * or start serving this sentence * * * "; and to the importance also of his setting some goal and pattern for his life and commencing to help his children, as factors the parole board might consider favorably, with the request made in his behalf. See fn. 3, *supra.*

This Court cannot say that Mr. Garner did not believe, as he now claims, that his sentences were not ordered [5] to run concurrently. If such was his belief at the time he presented his written petition to this Court stating a contrary belief, he was guilty of participating in the practice upon this Court of a blatant fraud. Out of a just consideration for persons accused of crime, this Court is extremely careful that no plea of guilty will be accepted unless made voluntarily by the accused person after proper advice and with full understanding of the consequences. Cf. Kercheval v. United States (1927), 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009, 1012. Mr. Garner led this Court to believe that his guilty plea was made voluntarily after he had been assisted by counsel all he wished and when he understood fully the consequences of such plea. The Court was powerless to know what may have transpired outside its presence and was

5. The Court harbors a strong opinion on the subject but pretermits here the question of whether a federal court may order a federal sentence to run concurrently with or consecutively to a state sentence.

reduced to reliance on information provided by statements in open court made by Mr. Garner and the attorneys concerned with his problem.

Under Mr. Garner's contentions, not only was the Court misled into accepting his guilty plea as one being voluntarily and understandingly made, which could be now corrected if Mr. Garner had carried the burden of proving his instant claims, the Court was also misled thereunder into allowing the prosecution to dismiss simultaneously four more-serious offenses charged against Mr. Garner. Only in extreme circumstances should Mr. Garner be allowed to profit from a fraud upon the Court, in which he not only participated but which emanated from his own suggestion to his counsel.

For the Court to find that Mr. Garner has sustained his instant claims, it would be necessary for the Court to accredit all that he testified on the hearing hereof and to discredit all that his court-appointed attorney and the prosecuting attorney testified, as well as the pertinent official records of this Court. There is no issue raised as to the credibility of the witnesses Messrs. Ramsey and Scott. There is an issue as to the credibility of Mr. Garner, because of his interest in the outcome of this proceeding and the manner he will be affected thereby. This is sufficient to impeach, and therefore discredit, his testimony. The Court finds that the version testified to by the aforenamed attorneys is the true version, and that Mr. Garner has not carried the necessary burden of proving his contentions.

The aforementioned application for the writ of habeas corpus hereby is

Denied.

The Court expresses appreciation for the gratuitous services to Mr. Garner and the Court of B. B. Guthrie, Esq., a member of the bar of this Court and a former assistant United States attorney, who, at the Court's request, 28 U.S.C. § 1915(d), represented the petitioner herein and apparently developed to the fullest Mr. Garner's contentions.

An order will be prepared, signed and entered by the clerk, dismissing Mr. Garner's petition. Rule 58, Federal Rules of Civil Procedure.