99 F.3d 400
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Frank LANGELLA, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 95-2322.
 United States Court of Appeals, Second Circuit.
 Dec. 8, 1995.
 
 Appearing for Appellant: Carlo Joseph Calvi, Yonkers, N.Y.
 Appearing for Appellee: Deirdre M. Daly, Assistant U.S. Attorney, S.D.N.Y., New York, N.Y.
 Present FEINBERG, OAKES and CALABRESI, Circuit Judges.
 ORDER
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (Brieant, J.), it is hereby
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 Frank Langella appeals from an order entered on May 18, 1995, in the United States District Court for the Southern District of New York (Brieant, J.), denying his petition to vacate his conviction pursuant to 28 U.S.C. § 2255.
 
 
 1
 Langella was charged with assisting co-defendant Michael Calvi (a public official of the City of Yonkers) in a scheme to extort payoffs from John Mancini, a local businessman, in exchange for Calvi's promise to help award Mancini a contract to rehabilitate the Yonkers City Jail.
 
 
 2
 On April 19, 1994, Langella was convicted, after a jury trial, of extortion under color of official right, in violation of 18 U.S.C. §§ 1951(a) (the Hobbs Act) and 2. The district court sentenced Langella primarily to eighteen months in prison. This court affirmed Langella's conviction by summary order. United States v. Calvi & Langella, Nos. 94-1409, 94-1423, 94-1441 (2d Cir. Mar. 31, 1995).
 
 
 3
 Langella's § 2255 motion sets forth numerous grounds for challenging his conviction. His main contentions are: (1) that newly discovered evidence shows that there was an insufficient nexus between the charged crime and interstate commerce, thus depriving the district court of subject matter jurisdiction; (2) that the Government violated its duty to disclose exculpatory evidence to the defense by failing to turn over before trial photocopies of $100 bills allegedly used to pay off Calvi; (3) that the conviction was obtained by multiple perjuries committed at trial by Government witnesses. The district court rejected each of these contentions. We agree and affirm.
 
 
 4
 1. Nexus with interstate commerce. On direct appeal, we rejected Langella's argument that there was not a sufficient nexus between the extortion scheme and interstate commerce for purposes of the Hobbs Act. Calvi & Langella, Nos. 94-1409 etc., order at 2. In his § 2255 petition, Langella claims that he recently discovered that certain documents used by Mancini in the bidding process were in fact fraudulent. According to Langella, this newly discovered evidence shows that Mancini was not in fact engaged in business but had merely set up a shell corporation. He then argues that a scheme to defraud a shell corporation cannot be considered to have any nexus with interstate commerce. We reject this argument. Even if Mancini's corporation would not have been able to carry out the jail rehabilitation job for which he was bidding, the bidding process itself was nevertheless connected to interstate commerce. As we mentioned in our order rejecting Langella's direct appeal, Mancini had, for example, already arranged for a representative from a Florida prison-management company to visit the prison site in Yonkers. This fact alone creates a sufficient nexus with interstate commerce to support the district court's jurisdiction.
 
 
 5
 2. Brady material. Langella next asserts that by failing to produce photocopies of the $100 bills that were purportedly used by Mancini to pay off Calvi, the Government violated its duty to turn over exculpatory evidence to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Those photocopies were produced only after Langella had been convicted and sentenced, but before his direct appeal. By tracing the serial numbers of the bills through the Bureau of Engraving and Printing and the Federal Reserve Bank of New York, Langella's counsel has produced evidence that thirteen of the $100 bills did not arrive at private banks until shortly before the payoff date--in one case, approximately four days beforehand.
 
 
 6
 Any failure to disclose these photocopies before trial was clearly harmless, since this new evidence nevertheless shows that the $100 bills were in fact in circulation at the date of the payoff. And in any event, as the district court observed, the evidence at trial overwhelmingly established that Mancini actually handed Calvi $5,000 in cash. Mancini directly testified that he handed the cash-filled envelope to Calvi, who then placed it in the trunk of his car. This account is corroborated by FBI surveillance tapes, and by a subsequent taped conversation in which Calvi thanked Mancini for the payoff. Thus, any questions surrounding the particular bills photocopied by the FBI does not undermine the conclusion that the $5,000 payoff in fact occurred.
 
 
 7
 Because pre-trial disclosure of the photocopies could not have changed the outcome of this case, we find that the photocopies were not material to Langella's defense and that no Brady violation occurred. See Brady, 373 U.S. at 87 ("suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material ... to guilt"); Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987) ("Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (alteration omitted)).
 
 
 8
 3. Perjury by Government Witnesses. Langella next claims that Government witnesses Mancini and Donald Calabrese (an accomplice witness) perjured themselves at trial when they minimized the extent of their relationships with Joseph Schlimer, a Yonkers politician, and that the Government was aware of their perjury. He bases this assertion on inconsistencies between the witnesses' statements at trial and their statements during prior conversations taped by the government. Because those tapes were given to Langella before trial, he could have made this argument on direct appeal. He has failed to show any reason for his failure to do so, and we therefore hold that he is procedurally barred from making this contention for the first time on a § 2255 motion. Campino v. United States, 968 F.2d 187, 189-90 (2d Cir.1990). (In any event, we note that Langella has not produced enough evidence to show that the witnesses committed perjury.)
 
 
 9
 4. Evidentiary Hearing. Finally, Langella argues that the district court should have held an evidentiary hearing on his § 2255 petition. It is well-settled in this Circuit that the filing of a habeas petition does not entitle the petitioner automatically to a hearing. See Newfield v. United States, 565 F.2d 203, 207-08 (2d Cir.1977); Rule 8(a), Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code. To warrant a hearing, the petitioner must set forth detailed and controverted issues of fact that, if proved at a hearing, would entitle the petitioner to relief. Machibroda v. United States, 368 U.S. 487, 494-95 (1962). Because we hold that all of Langella's claims are either immaterial or procedurally barred, we agree with the district court's determination that a hearing was not warranted.
 
 
 10
 We have examined Langella's other contentions, and find them to be without merit. The district court's judgment is therefore affirmed.