**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert H. SLATKO, Defendant-Appellant.**

**No. 71–3437.**

United States Court of Appeals,
Fifth Circuit.

July 20, 1972.

Rehearing Denied Sept. 6, 1972.

Robert H. Slatko, pro se.

Robert W. Rust, U. S. Atty., Miami, Fla., Sylvia S. Ellison, U. S. Dept. of Labor, Washington, D.C., Charles O. Farrar, Jr., Neal R. Sonnett, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before RIVES, BELL and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

Once again we are asked to review the propriety and constitutionality of a plea bargaining agreement. In 1964–65 the Government undertook an investigation of Robert Slatko, an attorney, for possible violations of income tax laws. Slatko had not filed timely tax returns for those two years. At the close of the investigation Slatko did file returns for 1964 and 1965. Nonetheless, the Gov-

ernment indicted him on three misdemeanor charges (under 26 U.S.C. § 7203) for willful failure to file timely returns for the years 1963, 1964, and 1965. Slatko pleaded not guilty to all three counts. He contended that he had filed a timely return for 1963 (but that the Government had apparently lost it) and that, although his returns for 1964 and 1965 were admittedly late, the lack of timeliness was not willful.

After several continuances and before trial, the Government indicted Slatko on four felony counts—filing perjured statements in connection with his 1964 and 1965 returns, and evading taxes for the same two years. 26 U.S.C. §§ 7201, 7206. Slatko again entered pleas of not guilty. On December 29, 1970, the felony charges and the misdemeanor counts were consolidated for trial. Thereafter Slatko approached the Government, offering to plead guilty to two of the misdemeanor counts (those relating to the years 1964 and 1965) if prosecution on all other counts was dropped. The Government refused, apparently because general policy in such cases would permit a plea bargain only if Slatko entered a plea of guilty to at least one of the felony counts. Nevertheless, on June 9, 1971, after the first day of trial, the Government changed its position and agreed to drop the felony charges in exchange for a nolo contendere plea to the 1963 misdemeanor charge and for guilty pleas to the 1964 and 1965 misdemeanor charges.

Slatko accepted the arrangement, and after a full hearing in accordance with Rule 11, Fed.R.Crim.P., the district judge accepted his pleas. Then, in October of 1971, the Florida Bar instituted a mandatory grievance proceeding against Slatko on account of his criminal conviction. Jose Martinez, who was the chief prosecuting attorney for the Government at Slatko's trial, testified as to the facts and circumstances involved in Slatko's case. Thereafter, Slatko asked the district court to allow him to withdraw his pleas on the misde-

meanor charges. Moreover, Slatko prayed for an injunction against prosecution on the felony counts. His theory for relief was two pronged: (1) Mr. Martinez, in his testimony to the Bar committee, revealed that Slatko's "Fifth Amendment right not to plead guilty [on the misdemeanor counts] did intrude into the mix of considerations underlying the prosecutorial decision to bring felony charges against him." (Appellant's Reply Brief at 2.) As such, said Slatko, the plea bargaining process was constitutionally infected. (2) Regardless of the Government's motive in bringing the felony charges, the effect of such action was to coerce a plea of guilty on the misdemeanor counts.

After a full hearing, at which Martinez again testified, the district court denied relief. In his oral findings the district judge first reasoned that the effect of the late bringing of the felony charges was no more coercive of a guilty plea on the misdemeanor counts than a simultaneous indictment on all counts would have been. Moreover, he found as a matter of fact that Slatko's "failure to indicate any willingness to enter a guilty plea to the misdemeanor charges [prior to the lodging of the felony indictment] had absolutely nothing to do with the bringing of the felony charges." (App. at 188). The district court's fact finding was not clearly erroneous and its legal conclusions are eminently sound. Accordingly, we affirm the judgment.

## I. The Prosecution's Motive in Bringing the Felony Charges.

Martinez testified at length as to the circumstances leading up to the felony indictment. He stated that in preparing to try the misdemeanor charges he delved thoroughly into the facts of the case. Thereupon he concluded, despite an earlier recommendation to the contrary by "Washington," that Slatko was "guilty of the felony." (App. at 119.) This conclusion was the "major factor"

in bringing felony charges. (App. at 120). Moreover, it became clear that much of the eviden·e necessary to obtain a misdemeanor conviction was the same evidence which would have been required to prove the felony charges. Accordingly, said Martinez, he recommended asking the grand jury for a felony indictment.

At one point during his testimony to the Bar committee, Martinez stated that while involved in pretrial preparation he resolved that if the Government went to trial on the misdemeanor only its case was a "loser." From this statement Slatko infers that the felony charges were brought so as to induce a guilty plea, thereby avoiding an unsuccessful prosecution. But Martinez's explanation of this statement is more persuasive. Put simply, he believed the Government had a far better case on the felony counts than on the misdemeanor charges.[1]

Slatko would also attribute an evil motive to the Government since Martinez stated that there was no reason for Slatko to plead guilty on any of the misdemeanor charges prior to the felony indictment. As Martinez explained, Slatko might as well have gone to trial on all the misdemeanor counts because, even if convicted on all three, the likelihood was that he would receive concurrent sentences. Yet this realization would be apparent to any competent lawyer. And importantly, after bringing the felony charges the Government did not approach Slatko with a bargain but, on the contrary, repeatedly refused Slatko's approaches. As Martinez testified: "Mr. Kasanoff [Slatko's counsel] kept bugging us to let you plead to the misde-

meanor[s] only during the entire pretrial procedure and up until the time we were able to convince Washington that we should." (App. at 116). It was only after a full day of trial, when the Government apparently realized that a felony conviction would be difficult to obtain owing to the complexity of the case,[2] that the Government acceded to Slatko's requests.

Put shortly, we agree with the district judge that there is simply nothing in the record to indicate that Slatko's refusal to plead guilty to the misdemeanors in any way influenced the Government's decision to bring the felony charges. Of course, the Government cannot threaten baseless prosecutions to induce a guilty plea. See Machibroda v. United States, 1962, 386 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473; Brady v. United States, 1970, 397 U.S. 742, 751 n. 8, 90 S.Ct. 1463, 25 L.Ed.2d 747. But in this case there is no evidence that the felony charges were baseless or that the charges were brought to induce a plea. Accordingly, Slatko's appeal on that ground must fail.

## II. The Coercive Effect of the Felony Charges.

The propriety of plea bargaining has long been the subject of heated debate. Yet the Supreme Court has unequivocally put its stamp of approval on the process. North Carolina v. Alford, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; *Brady, supra.* If the plea is knowingly and freely given it is constitutionally

---

1. To prove the misdemeanors charged, the Government would be required to show that Slatko's late filing was willful. He had several explanations for his tardiness: that he did not have available the facts and figures to file on time because much of his income was derived from foreign investments and that he was embroiled in domestic difficulty and simply overlooked the necessity for seeking an

extension of time in which to file. On the other hand, Martinez was convinced that he could prove evasion on the basis of the tax returns actually filed.

2. As Martinez testified before the Bar committee: "The first day we felt that our tax evasion charges were going very, very badly." Bar Committee Transcript at 62.

permissible. *Id.* In this case Slatko does not contend that he was unaware of the maximum penalty for or the consequences of a conviction on the misdemeanor counts. The trial judge fully advised him on that score. Rather, Slatko argues that the situation in which he was involved was instinct with coercion. Be that as it may, the Supreme Court in *Brady* noted with approval the practice of pleading guilty to get the prosecutor to drop some counts. That the felony charges in this case were brought long after the misdemeanor charges does not alter our conclusion that Slatko's plea was voluntary.

The judgment below is

Affirmed.