HOLLOWAY, Circuit Judge,
dissenting:
I respectfully dissent. The Order and Judgment of the majority thoroughly discusses the evidence and authorities pertaining to the ruling on appeal, the denial of Defendant Philipose’s motion under 28 U.S.C. § 2255 to set aside her plea and sentence. The basic issue raised by this appeal from that ruling is whether the Defendant was denied the constitutionally guaranteed effective assistance of counsel. I must disagree with the majority’s conclusion that Defendant received effective assistance of counsel.
The longstanding test for determining the validity of a guilty plea is “whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the Defendant.”[1] North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); see Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). The Defendant asserts that her guilty plea was not a voluntary and intelligent choice because she lacked the competency to make the rational decision necessary to enter into the plea. Defendant’s counsel failed to investigate her mental health status despite his knowledge of seriously disturbing circumstances about Defendant’s mental health. I am convinced that Defendant demonstrates that she received ineffective assistance of counsel due to counsel’s failure to properly investigate her mental status before conferring with her as to the advisability of entering a guilty plea.
It is uncontroverted that Defendant’s then counsel, Mr. Blasdel, knew that Defendant was under the care of a psychologist at the time Defendant entered into the plea agreement. Defendant’s psychologist, Doctor Hawkins’s, name was written in the change of plea petition. See Transcript of April 29, 2004 proceedings at 51. In response to Question 5 in the form which asks “Have you ever been under the care of a doctor or under treatment for a mental or emotional condition?,” the answer “yes” was marked. Id. Counsel also knew that Defendant had been under the care of Doctor McCoy, Defendant’s then treating general physician. Counsel admitted on cross examination that he was aware of the existence of Doctor McCoy and a document from the Oklahoma Diagnostic Imaging Company, which was reviewed by counsel, shows Doctor McCoy’s name as *644 the referring physician. Id. at 58. Doctor McCoy had referred Defendant to Doctor Hawkins because of concern about Defendant’s suicidal tendencies. Despite his knowledge that Defendant was being treated by Doctors McCoy and Hawkins, counsel did not make any effort to contact these health care professionals or to receive any medical information from them.
In representing Defendant in the underlying case, counsel contacted and reviewed medical evidence from some of Defendant’s physicians.[2] However, he did not contact or review medical evidence from Doctors McCoy and Hawkins. We, therefore, must decide whether it was reasonable for counsel to fail to contact these health care professionals before conferring with the Defendant on the advisability of entering a plea of guilty.
As the majority notes, there is a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Romano v. Gibson, 278 F.3d 1145, 1151 (10th Cir.2002). However, the presumption is not an absolute bar to a finding of ineffective assistance of counsel. A Defendant can sustain a claim of ineffective assistance of counsel if she is able to prove: (1) that counsel’s representation fell below an objective standard of reasonableness, and (2) that counsel’s deficient representation prejudiced her defense. See Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). At the same time, “counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Id. at 691, 104 S.Ct. 2052. In Strickland, the Supreme Court considered a similar claim as the one here. Defendant claimed ineffective assistance of counsel because counsel did not seek more character or psychological evidence than was already before the trial court. The Court rejected Defendant’s claim because it found that “counsel made a strategic choice to argue for the extreme emotional distress mitigating circumstance and to rely as fully as possible on [Defendant’s] acceptance of responsibility for his crimes.” Id. at 699, 104 S.Ct. 2052. The Court held that trial counsel could reasonably surmise from his conversations with Defendant that character and psychological evidence would be of little help. Id. “Restricting testimony on [Defendant’s] character to what had come in at the plea colloquy ensured that contrary character and psychological evidence and [Defendant’s] criminal history, which counsel had successfully moved to exclude, would not come in.” Id. As a result, the Court concluded that trial counsel’s defense was the result of reasonable professional judgment.
In the present case, it would be reasonable for counsel not to contact Doctors McCoy and Hawkins if it was not necessary to contact them or the decision not to do so was the result of a strategic choice. There is, however, no evidence in the record to show that it was either unnecessary for counsel to contact these health care professionals or that counsel made a strategic choice not to do so.
Doctor McCoy advised Defendant to spend some time in the family store because of his concern about Defendant’s suicidal ideation. See Transcript of April 29, 2004 proceedings at 26. Since Defendant was charged because of her alleged work in the family store, it would seem necessary for counsel to have contacted *645 Doctor McCoy to understand the basis for his advice to Defendant. Similarly, nothing in the record suggests that it was not necessary for counsel to contact Doctor Hawkins after he knew that Defendant was being treated by Doctor Hawkins for a mental health condition. On the contrary, it appears that counsel did not pay attention to the implication of his client being treated by a psychologist for a mental health condition.[3] By the time of the underlying plea proceedings in this case, Defendant’s condition had progressed beyond mere physical illness and pain to psychological and mental problems.[4] Had counsel contacted Doctor McCoy or Doctor Hawkins he would have discovered this fact casting doubt on Defendant’s competency to enter into a plea.
In addition, counsel’s failure to contact these health care professionals did not result from a strategic choice. Nothing suggests that evidence from Doctor McCoy or Doctor Hawkins could have been harmful to Defendant’s underlying case. Indeed, as mentioned above, counsel did not know the evidence they had and whether the evidence could have assisted or prejudiced Defendant’s case. Moreover, neither Defendant nor her relatives suggested to counsel that it was unnecessary to contact these health care professionals.[5] In short, *646 despite his knowledge of these medical professionals, counsel unreasonably failed to contact them.
The majority concludes that Defendant did not receive ineffective assistance of counsel because counsel’s performance did not fall below an objective standard of reasonableness. However, the majority provides no explanation why counsel’s duty to investigate in this case was unnecessary or the result of a strategic choice. Instead, the majority asserts that Defendant failed to apprise counsel of the details of her mental status, notwithstanding that counsel was aware that Defendant was being treated for a mental health condition. According to the majority:
Blasdel encountered a client who was well educated and demonstrated no difficulty in communicating with him about the case or the decision to plead guilty. He met with her, her husband, and her son numerous times and clearly explained the process of entering a guilty plea and the details of the plea agreement. At no point did anyone, including Philipose’s doctors or her chiropractor son, express to Blasdel a concern over Philipose’s competence.
See Order and Judgment at 11. The majority therefore implies that a Defendant has the duty to inform counsel of the details of Defendant’s mental status, even though such information could easily be gathered from Defendant’s mental health professional.
In view of the fact that counsel here was aware that Defendant was being treated for a mental health condition, the “education” or the ability of Defendant to “communicate” should not be relevant to counsel’s decision to investigate Defendant’s mental status. In many cases of incompetency, Defendant will be well educated and can communicate and that fact should not obviate counsel’s duty to investigate, especially after counsel knows that his client is being treated for a mental health condition. A criminal defense lawyer should know that when a client is being treated for a mental health condition, the client may not be the source of authority for the client’s condition or basis of treatment.
Similarly, the failure of Defendant’s son and doctors to express concern about Defendant’s competency should not be of any significance in this case. Counsel knew here that Defendant was being treated for a mental health condition. A Defendant provides the names of her treating physicians and mental health professionals to a lawyer so that the lawyer can evaluate the information from the professionals and make the judgment on case strategy. As Strickland makes clear, counsel has the duty to investigate. Strickland at 691, 104 S.Ct. 2052 (“counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary”). Defendant’s doctors have no such duty and indeed may not provide any information to counsel or the court, without the permission of the client, in light of the physician-patient privilege.
Even though counsel knew that Defendant was being treated for a mental health condition, he failed to contact Defendant’s treating mental health professional before advising Defendant to enter into a plea. Counsel did not carefully evaluate the importance of the fact that Defendant was receiving mental health treatment. It was *647 not unnecessary for counsel to contact Doctor Hawkins and counsel should not have relied on his untrained, non-medical judgment to conclude that Defendant’s pain management could not affect her competency. Counsel’s failure to investigate Defendant’s mental health status did not result from a strategic choice or out of consideration that evidence from Doctor Hawkins would be harmful to Defendant’s case. Accordingly, it was unreasonable for counsel not to investigate Defendant’s mental health status before conferring with her on the advisability of entering into a plea.
During the evidentiary hearing, Doctor McCoy and Doctor Hawkins presented the picture of a disturbed, traumatized and incompetent patient who could not reasonably evaluate the consequences of entering into a plea. Doctor Hawkins testified that Defendant suffered from post traumatic stress disorder. See Transcript of April 29, 2004 proceedings at 5. According to Doctor Hawkins, this made Defendant indifferent about life, Id. at 6, and disinterested in the consequences of things. Id. at 7. Doctor Hawkins testified that Defendant was self-destructive. Id. at 10. He testified that Defendant was suicidal. Id. He testified that Defendant was on Demerol periodically, even though she could not use it consistently due to tolerance problems with the medication. Doctor Hawkins testified that he would be skeptical of Defendant having made a knowing, voluntary and rational decision to enter a plea of guilty in this case. Id. at 11.
Doctor McCoy testified that Defendant’s ability to make a rational decision and understand the consequences of that decision were greatly impaired. Id. at 23. Doctor McCoy described Defendant as living with an unrelenting, nagging at times very severe overwhelming pain on one hand and with medication which caused extreme nausea and intractable vomiting on the other. Id. at 23-24. Doctor McCoy stated that he was concerned about the Defendant’s suicidal ideation, and that he did not remember another patient in his practice over the course of seven years with whom he was as concerned. Id. at 25. Doctor McCoy testified that the short acting narcotics the Defendant was prescribed would impair or affect in a negative manner the cognitive function of the Defendant. Id. at 31.
The conclusions of these professionals about Defendant’s mental and physical health at the time she entered into the plea were neither refuted nor challenged by the Government. Therefore, Defendant lacked the competency to enter into the plea based on the opinion of the doctors.
As the Supreme Court has stated, in order to prove that a counsel’s action or omission were prejudicial to a Defendant’s case, “defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland at 694, 104 S.Ct. 2052. Here, had counsel contacted Doctor Hawkins before Defendant entered into the plea, he would have likely questioned Defendant’s competency to enter into the plea. Had counsel contacted Doctor McCoy, he would have more properly understood why Defendant was in the store and even known that Doctor McCoy considered Defendant’s presence in the store therapeutic.[6] Thus, there is a reasonable probability that the outcome would have been different in this case both on the merits of the charge *648 and Defendant’s competency to enter into the plea.
Accordingly, I would vacate the district court’s judgment and remand. Upon remand, I would direct that the district court set aside Defendant’s plea of guilty and her sentence and I would direct that the district court determine Defendant’s present competency. If Defendant is then found to be presently competent, the Government may consider whether further proceedings against the Defendant should be undertaken or whether the criminal proceedings should be dismissed.

. Although this court has not granted a Certificate of Appealability (COA) on the issue of whether Defendant’s plea was invalid because she was incompetent, Defendant’s competency is directly relevant to the issue on which we have granted a COA: whether she received ineffective assistance of counsel. This is because even if counsel’s performance fell below an objective standard of reasonableness, Defendant would not be prejudiced unless she indeed lacked competency at the time she entered into the plea.

. The record shows that counsel reviewed medical evidence from Doctors Brent Tipton and Nathan Bradley who apparently at different times had treated Defendant. Id. at 43. Counsel also reviewed medical evidence from Doctor Jeff Pardee, the federal workers compensation doctor that reviewed Ms. Philipose's condition. Id.

. Although Defendant provided information to counsel that she was being treated by Doctor Hawkins for a mental health condition, counsel did not seek to know more about Defendant’s mental health status from Defendant. On direct examination during the § 2255 evidentiary hearing, counsel, Blasdel, stated that he did not feel that Defendant’s pain management could affect Defendant’s competence even after he knew that Defendant was being treated for a mental health condition. Transcript at 51. This suggests that Blasdel’s failure to contact Doctor Hawkins did not result from due consideration of the importance of this fact.

. The majority opinion misses this point and concentrates on counsel's initial conduct in reviewing the medical evidence from some of Defendant’s doctors. The opinion fails to articulate why counsel’s knowledge that Defendant was being treated for a mental health condition at the time of the plea proceedings should not have raised counsel’s curiosity and interest to investigate Defendant’s mental health status.

. Counsel’s conduct may be reasonably influenced by the actions or statements of a client. In Strickland, the Supreme Court noted:
The reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions. Counsel’s actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel’s failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel’s conversations with the defendant may be critical to a proper assessment of counsel’s investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.
Strickland at 691, 104 S.Ct. 2052 (internal citations omitted). In the present case, nothing suggests that Defendant led counsel to believe that it was unnecessary to contact Doctor McCoy or Doctor Hawkins. Nor is there any evidence to suggest that Defendant gave counsel reason to believe that it would be fruitless to contact the doctors or that information from them would be detrimental to her case.
The majority asserts that counsel thoroughly investigated Defendant's case. However, this is not supported by the record. Although counsel reviewed the records of some of Defendant’s physicians, he did not contact Doctors McCoy and Hawkins who were at the time treating Defendant for both pain and mental health problems. More importantly, his omission of contact with Doctor McCoy *646 ignored the fact that Doctor McCoy was the doctor that advised Defendant to spend some time in the family store, the reason for which she was charged. An assertion of thoroughness should require review of the records from Doctors McCoy and Hawkins since counsel knew about them.

. During the evidentiary hearing, Doctor McCoy testified that he thought Defendant being in the store, and even greeting customers, could be therapeutic. Transcript at 32.